## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Synthes USA HQ, Inc., | : | |
|     Petitioner | : | |
| | : | |
|   v. | : | No. 108 F.R. 2016 |
| | : | ARGUED: June 11, 2020 |
| Commonwealth of Pennsylvania, | : | |
|     Respondent | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE CEISLER                    FILED: July 24, 2020

Synthes USA HQ, Inc. (Synthes) petitions for review from a decision of the Board of Finance and Revenue (Board). The Board affirmed a decision of the Department of Revenue (Department) denying a corporate net income tax refund sought by Synthes for the 2011 tax year.[1]

The Commonwealth, through the Attorney General (Commonwealth), is the respondent before this Court.[2] The Commonwealth has taken a position before this Court that would alter drastically the Department's longstanding interpretation of a corporate net income tax provision applicable to pre-2014 tax years. The Department has therefore applied to intervene. This Court listed the application to intervene for disposition with the merits.

---

[1] It is undisputed that the refund petition and all appeals were timely.

[2] Rule 1571(c) of the Rules of Appellate Procedure requires that a petition for review by a taxpayer must name the Commonwealth (rather than the Department or the Board of Finance and Revenue (Board)) as the Respondent. Pa. R.A.P. 1571(c).

After thorough review, we grant the Department's application to intervene, reverse the decision of the Board, and remand to the Board for a further remand to the Department to issue an appropriate tax refund to Synthes.

## I. Background

Synthes, a Pennsylvania-based corporation, provides research, development, and management services to affiliates located outside Pennsylvania. In calculating its 2011 Pennsylvania corporate net income tax, Synthes determined its percentage of out-of-state sales of services by applying an interpretation of the Tax Reform Code of 1971[3] (Tax Code) that differed from the interpretation the Department had consistently applied for many years. Synthes later requested a refund because the Department's interpretation of the Tax Code would have resulted in a lower tax. The Department denied the refund request because it found Synthes failed to present sufficient evidence to demonstrate where its sales occurred.

Synthes appealed to the Board, which upheld the Department's refund denial, agreeing that Synthes did not satisfy its burden of proof. *See* Br. of Resp't at 10; Stipulated Facts ¶¶ 66, 68, Ex. D at 95, Ex. E, Ex. F at 101-02. Synthes then petitioned for review in this Court.[4]

The Commonwealth acknowledges that Synthes eventually established the evidence needed to support its refund claim under the Department's interpretation of the Tax Code, once its claim had reached this Court. *See* Br. of Resp't at 10; Stipulated Facts ¶¶ 12, 15-16, 18-20, 24-33, 63-64. The Department does not

---

[3] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101 – 10004.

[4] This Court reviews decisions of the Board *de novo* based on stipulated facts or a record created before this Court. Pa. R.A.P. 1571(h); *Plum Borough Sch. Dist. v. Commonwealth*, 860 A.2d 1155 (Pa. Cmwlth. 2004), *aff'd without op.*, 891 A.2d 726 (Pa. 2006). Here, the record consists of stipulated facts and stipulated documents.

contend otherwise. The Commonwealth argues, however, that the Department's interpretation of the Tax Code was in error and is not entitled to any deference from this Court. Thus, the Commonwealth contends Synthes is not entitled to a tax refund, but for a different reason from that found by the Department and the Board.

The Department, as putative intervenor, maintains that its interpretation of the Tax Code concerning calculation of Synthes's Pennsylvania sales was correct. Indeed, that interpretation was not placed at issue until the Commonwealth raised it before this Court. The Department therefore seeks to intervene and be heard on the issue along with the parties.

Synthes argues that regardless of which calculation method was correct, Synthes is entitled to the same tax break other taxpayers received from the Department.

## II. Issues

Synthes asserts two arguments before this Court. First, Synthes contends the Department's interpretation of the Tax Code was correct regarding calculation of the sales factor for apportioning corporate net income tax among multiple states. Like the Department, Synthes argues its sales of services should be apportioned according to where customers received the benefits of Synthes's services, not where Synthes incurred costs of performing those services.

Second, Synthes asserts it is entitled to a tax refund based on the Department's interpretation of the Tax Code, even if the Department's interpretation was incorrect and Synthes used the correct calculation method at the time it paid the tax. Synthes insists the Department must accord Synthes the same tax break it gave other

3

corporate taxpayers, as required by the Uniformity Clause of Article VIII, Section 1 of the Pennsylvania Constitution.[5]

### III. Discussion

### A. Tax Code – Subparagraph 17

In Pennsylvania, a corporation with taxable business activities in more than one state must apportion its income among the applicable states for income tax purposes, using a formula provided in the Tax Code. The statutory formula includes a property factor, a payroll factor, and a sales factor. *See* Sections 401(3)2.(a)(2) and 401(3)2.(a)(9)(A)(iv) of the Tax Code, 72 P.S. §§ 7401(3)2.(a)(2), 7401(3)2.(a)(9)(A)(iv). Only the sales factor is at issue in this case.[6]

The taxpayer's income from sales of services is taxed based on the proportion of its sales that occur in Pennsylvania. The sales factor is expressed as a fraction. The numerator is the dollar amount of the taxpayer's sales in Pennsylvania for the applicable tax year. The denominator is the taxpayer's total sales everywhere for the tax year. 72 P.S. § 7401(3)2.(a)(15).

Synthes sells services to customer affiliates located in other states. Thus, the question here is whether sales of services by Synthes, a Pennsylvania corporation, to businesses outside Pennsylvania constitute sales in Pennsylvania or sales where the purchasing businesses are located, for purposes of calculating the sales factor.

---

[5] "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1.

[6] All of Synthes's $271 million in property is in Pennsylvania, and 95% of its 2011 payroll of $156 million was paid in Pennsylvania. Stipulated Facts ¶¶ 60-61.
**(Footnote continued on next page…)**

4

Under the Tax Code as it applies to this case,[7] a sale of a service occurs in Pennsylvania if:

(A) The income-producing activity is performed in this State; or

(B) The income-producing activity is performed both in and outside this State and a greater proportion of the income-producing activity is performed in this State than in any other state, based on costs of performance [(costs-of-performance method)].

72 P.S. § 7401(3)2.(a)(17) (Subparagraph 17). The Tax Code does not define either "income-producing activity" or "costs of performance."

## B. Intervention by the Department

In support of its application for intervention, the Department points out that it is the agency charged with settling and collecting taxes for the Commonwealth, as well as issuing refunds when appropriate.[8] *See* Br. of Intervenor at 4-5 (citing Sections 201 – 203 and 206 of the Fiscal Code,[9] 72 P.S. §§ 201-203, 206; Sections 201-212, 401(7), 407.1, 407.3(d), 407.5, and 3003.1 of the Tax Code, 72 P.S. §§ 7201-12, 7401(7), 7407.1, 7407.3(d), 7407.5,[10] and 10003.1[11]). The Department

---

[7] The applicable provision, designated here and by the parties as Subparagraph 17, was amended by the legislature effective January 1, 2014. The amendment is discussed below.

[8] Although the Attorney General asserts that its office is the entity charged with collecting taxes, Section 204(c) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, 71 P.S. §§ 732-204(c), provides: "The Attorney General shall collect, by suit or otherwise, all debts, taxes and accounts due the Commonwealth *which shall be referred to and placed with the Attorney General for collection by any Commonwealth agency*." (Emphasis added.) The Department did not place any tax with the Attorney General for collection. Rather, Synthes appealed from the Department's refusal to refund taxes previously paid.

[9] Act of April 9, 1929, P.L. 343, *as amended*.

[10] Sections 407.1, 407.3, and 407.5 were added by Act of October 18, 2006, P.L. 1149.

[11] Section 3003.1 was added by Act of July 1, 1985, P.L. 78.

also observes that it is a party to proceedings before the Board. Br. of Intervenor at 5 (citing Section 704(d.1)(2) of the Fiscal Code, 72 P.S. § 704(d.1)(2)). As such, the Department was entitled to intervene as of right within 30 days after notice of filing of the petition for review, or thereafter by obtaining permission to intervene. Pa. R.A.P. 1531(a). However, the Department asserts it was not subject to the 30-day requirement because Synthes failed to name the Department as a Respondent and include a Notice to Participate directed to the Department. Br. of Intervenor at 6 (citing *Lautek Corp. v. Unemployment Comp. Bd. of Review*, 583 A.2d 7, 9-10 (Pa. Cmwlth. 1990)).

Alternatively, the Department argues that even if it needs permission to intervene, this Court should grant such permission. The Department contends it did not become fully aware of the Commonwealth's position concerning interpretation of Subparagraph 17 until the Commonwealth filed its brief in January 2020.[12]

---

[12] The Commonwealth appears in this action through the Attorney General. Section 204(c) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, *as amended*, requires the Attorney General to represent a Commonwealth agency in any action brought by or against the agency. 71 P.S. § 732-204(c). We note with dismay the Attorney General's assertion in this case of a legal position directly adverse to that of its client, the Department. Rather than advocating the Department's longstanding construction of a tax statute, a matter peculiarly within the Department's expertise, the Attorney General has forced the Department to seek intervention in order to defend its interpretation of the tax provision at issue.

We are unaware of any constitutional or statutory authorization or mandate for such conduct. Section 204 of the Commonwealth Attorneys Act requires an agency to follow the advice of the Attorney General **when sought**, or seek a declaratory judgment from this Court if the agency disagrees with the advice in question. 71 P.S. § 732-204(a)(1), (2). Here, however, neither the Department nor the Board sought the Attorney General's advice concerning the proper interpretation of Subparagraph 17. Moreover, to the extent the Attorney General believed itself entitled to control the position to be advocated in this Court, and upon reaching a legal interpretation contrary to that of the Department, the Attorney General should have so advised the Department. The Department could then have initiated a request for a declaratory judgment as anticipated by Section 204(a).

**(Footnote continued on next page…)**

6

The Commonwealth has not taken a position either supporting or opposing the Department's application for intervention. Synthes initially opposed the Department's request for intervention, but withdrew its opposition at oral argument.

The Department has a clear interest in the Tax Code issue presented in this case. The Department was entitled to intervene as of right within 30 days after notice of the petition for review. No other party contends that any prejudice would arise from allowing the Department to intervene at this point. For these reasons, we grant the Department's application for intervention.

## C. Synthes's Refund Request

The parties have stipulated that Synthes's customers received the benefits of Synthes's services outside Pennsylvania. *See* Stipulated Facts, ¶ 63, Ex. C. However, Synthes incurred costs in performing its services for its affiliate customers, and most of those costs were incurred in Pennsylvania. Thus, whether Synthes must calculate its sales factor using the costs-of-performance method or the benefits-received method has a major impact on the determination of its sales factor, and consequently on the amount of state income tax it must pay.

Although the Department never issued a regulation or formal policy concerning its construction of Subparagraph 17, it interpreted and enforced Subparagraph 17 consistently for decades, including during the tax years relevant to

Additionally, Section 204(c) of the Commonwealth Attorneys Act (Act of October 15, 1980, P.L. 950, as amended), provides that "[t]he Attorney General may, upon determining that it is more efficient or otherwise is in the best interest of the Commonwealth, authorize the General Counsel or the counsel for an independent agency to initiate, conduct, or defend any particular litigation or category of litigation in his stead." 71 P.S. § 732-204(c). Here, rather than acting directly adversely to its client's position, the Attorney General could have authorized counsel for the Department or the Board to litigate this matter before this Court, thereby avoiding this unseemly conflict between the Commonwealth and its own agency concerning a statutory construction issue within the agency's expertise.

**(Footnote continued on next page…)**

7

Synthes's refund claims.[13] The Department treated each sales receipt as a separate income-producing activity. It then deemed each income-producing activity as having occurred at the location where the customer received the benefit of the service (benefits-received method). Stipulated Facts, ¶ 37. In its brief before this Court, the Department asserts this same interpretation of Subparagraph 17.

Synthes originally calculated and paid its 2011 corporate net income taxes using the costs-of-performance method of determining the sales factor. Synthes subsequently sought a refund from the Department on the basis that the Department had consistently applied the benefits-received method of interpretation of Subparagraph 17.

Notwithstanding its consistent application of the benefits-received method, the Department denied Synthes's refund request because it found Synthes offered inadequate evidence to establish where its sales occurred. The Board affirmed the Department's decision on the same basis. Before this Court, however, the Commonwealth concedes, and the Department does not dispute, that Synthes has now supported its refund claim with sufficient evidence. Therefore, under the Department's interpretation of Subparagraph 17, Synthes has established entitlement to a tax refund. If Synthes is entitled to use the benefits-received method, it will receive a refund of more than $2 million for the 2011 tax year.

Synthes also asserts that it is still entitled to a refund even if the Department erred in applying the benefits-received method. Synthes argues that pursuant to the Uniformity Clause, it should be treated the same as other taxpayers for the same tax

---

[13] Synthes filed petitions for review in this Court concerning refunds for other tax years in addition to 2011. Those petitions have been stayed pending the outcome of this case. They are docketed at Nos. 107, 109, and 110 F.R. 2016.

8

year, whose taxes were calculated by the benefits-received method, as enforced by the Department and the Board.

Nonetheless, as discussed above, the Commonwealth argues that the Department erred in applying the benefits-received method, and that Synthes was correct when it calculated its 2011 tax using the costs-of-performance method.

## D. Construction of Subparagraph 17

The Commonwealth acknowledges that the Department has consistently applied and enforced the benefits-received method of calculating the sales factor under Subparagraph 17. Where taxpayers have filed petitions for review, the Board has consistently upheld the Department's position. If further petitions for review were filed with this Court, the Commonwealth reached compromise settlements with the petitioners. Stipulation of Facts ¶¶ 50(D), 51(D), 53(D). Thus, this case represents the first time this issue has reached this Court.

### 1. The Department's Position

The Department, supported by Synthes, argues the benefits-received method of calculating the sales factor represents the correct interpretation of Subparagraph 17. The Department asserts that the benefits-received method is consistent with the language of the Tax Code. The Department points out that as the agency charged with interpreting and applying the Tax Code, it is entitled to deference in its interpretation.

The Department begins from the premise that the Tax Code fails to define either "income-producing activity" or "costs of performance." The Department reasons that under Subparagraph 17(A), "income-producing activity" for the sale of a service is the actual provision of the service to the customer, because that is what generates the taxpayer's income. Therefore, the Department concludes that the place

9

where the income-producing activity occurs is the place where the customer receives the benefit of the service, or in other words, where the customer is located. Accordingly, if a customer is outside Pennsylvania, Synthes's income-producing activity regarding that customer occurs outside Pennsylvania.

As for the "costs of performance" under Subparagraph 17(B), the Department reasons that analysis applies only where a customer receives services both inside and outside of Pennsylvania. In that instance, the Department determines whether to allocate each sale of a service to Pennsylvania based on whether the seller incurred more costs of performing the service inside or outside Pennsylvania.

The Department argues the plain meaning of "performance" is "'fulfillment or accomplishment of a promise, contract, or other obligation….'" Br. of Intervenor at 13 (quoting Black's Law Dictionary (5th ed. 1979)). Therefore, the Department contends the location where performance is fulfilled, *i.e.*, the location where the customer receives the service, is the location where income-producing activity is performed.

The Department asserts that its interpretation is consistent with our Supreme Court's analysis in *Commonwealth v. Gilmour Manufacturing Co.*, 822 A.2d 676 (Pa. 2003). In *Gilmour*, the Supreme Court found that with regard to sales of personal property, "the numerator of the sales factor represents the contribution of Pennsylvania consumers and purchasers to the entity's sales, while the denominator represents the contribution of all consumers and purchasers." *Id.* at 683. The Department suggests there is no reason to calculate the sales factor differently regarding sales of services.

The Department further argues that the benefits-received method of calculating the sales factor apportions sales of services more fairly than the costs-of-

10

performance method advocated by the Commonwealth. Under the costs-of-performance method, out-of-state corporations providing services to Pennsylvania customers would be able to avoid taxes on services that would be taxable if performed by a Pennsylvania corporation, thus imposing a disadvantage on Pennsylvania businesses and providing a disincentive for businesses to locate in Pennsylvania.

The Department also points out that although Pennsylvania did not formally adopt the Uniform Disposition of Income for Tax Purposes Act (Uniform Act),[14] the language of Subparagraph 17 is taken directly from the Uniform Act. Br. of Intervenor at 22 (citing *Gilmour*). The Department posits that statutes uniform with those of other states should be construed to effect their general purpose of uniformity with the laws of those other states. Br. of Intervenor at 15 (citing 1 Pa. C.S. § 1927). The Department cites decisions from several other jurisdictions that have applied the Uniform Act consistently with the Department's interpretation of Subparagraph 17. *See* Br. of Intervenor at 16-17 (citing, *e.g.*, *Walter E. Heller Western, Inc. v. Ariz. Dep't of Revenue*, 775 P.2d 1113, 1116 (Ariz. 1989) (consumer's location controls allocation of sales other than tangible personal property; "the term, 'income producing activity,' in our regulation contemplates only direct sales payment activity by the consumer"); *Bank of Am. Consumer Card Holdings v. N.J. Div. of Taxation*, 29 N.J. Tax 427, 464 (2016) (service fee is earned where customer receives the benefit of the service); *DIRECTV, Inc. v. S.C. Dep't of Revenue*, 804 S.E.2d 633, 640-41 (S.C. App. 2017) (sales factor for corporation providing service to customers

---

[14] The Uniform Disposition of Income for Tax Purposes Act (Uniform Act) was drafted by the National Conference of Commissioners on Uniform State Laws (National Conference). The National Conference recommended the Uniform Act in 1957 for adoption by all of the states. https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFile Key=1ed71060-2212-9426-e7f7-e723d9cb4929&forceDialog=0 (last visited July 23, 2020).

11

in multiple states was calculated based on where customers receiving services were located)); *cf. Ameritech Publ'g, Inc. v. Wis. Dep't of Revenue* (Wis. Ct. App. No. 2009AP445, filed June 24, 2010), 2010 WL 2519583 at *12 (service provided by Wisconsin corporation distributing phone directory consisted of providing access to local Wisconsin directory market, not merely delivery of phone books in other states; therefore, sales factor was to be calculated based on fees paid by Wisconsin advertisers rather than phone book recipients).

Finally, the Department argues that as the agency charged with applying and enforcing the Tax Code, it is entitled to deference in its interpretation of the Tax Code's provisions. Br. of Intervenor at 17 (citing *Phila. Suburban Corp. v. Commonwealth*, 601 A.2d 893, 898 (Pa. Cmwlth. 1992)). The Department observes, moreover, that because the Tax Code is technically complex, this Court should be even more reluctant to substitute its discretion for that of the Department, the agency with expertise in interpreting the Tax Code. Br. of Intervenor at 17-18 (citing *Phila. Suburban*; *Smithkline Beckman Corp. v. Commonwealth*, 482 A.2d 1344, 1353 (Pa. Cmwlth. 1984)).

## 2. The Commonwealth's Position

The Commonwealth contends the Department's interpretation of Subparagraph 17 is incorrect. The Commonwealth insists Synthes correctly calculated its sales factor for its 2011 taxes by applying the costs-of-performance method. Therefore, Synthes is not entitled to a refund.

The Commonwealth first asserts that the Department's interpretation of Subparagraph 17 is not entitled to substantial deference because it was never adopted

12

as a legislative regulation.[15]  Because the Department's interpretation is merely an interpretive rule, it does not have the force of law.  Br. of Resp't at 17 (citing *Dechert LLP v. Commonwealth*, 998 A.2d 575, 584 n.8 (Pa. 2010); *Graham Packaging Co., LP v. Commonwealth*, 882 A.2d 1076, 1079 n.5 (Pa. Cmwlth. 2005)).  The Commonwealth observes that a court may disregard an agency's interpretive rule if it is unwise or violates the legislature's intent.  Br. of Resp't at 17 (citing *Gilmour*, 822 A.2d at 679; *Girard Sch. Dist. v. Pittenger*, 392 A.2d 261, 263 (Pa. 1978)).

The Commonwealth contends the Department's application of the benefits-received method of calculating the sales factor fails to effectuate the legislature's intent.  The Commonwealth acknowledges that the plain language of a statute is the best indication of legislative intent, but the terms "income-producing activity" and "costs of performance" in Subparagraph 17 are not defined in the Tax Code.  The Commonwealth argues the Department's interpretation of Subparagraph 17 is incorrect because it views Subparagraph 17 from the customer's perspective rather than based on the taxpayer's actions.  The Commonwealth notes there is no express "benefits-received" language in Subparagraph 17.  The Commonwealth further asserts that Subparagraph 17 contains no language supporting the Department's treatment of each service receipt as a separate income-producing activity.

The Commonwealth suggests the Department's application of the benefits-received method produces a result the legislature could not have intended.  Contrary to the Department's argument that it properly construes Subparagraph 17 consistently with the calculation of the sales factor for sales of tangible property, the

---

[15] The Commonwealth correctly points out that the Department's interpretation of Subparagraph 17 is contained only in "general policy statements" such as "internal memoranda, instructions to auditors, correspondence, and *Information Notice – Corporation Taxes 2014-01*." Br. of Resp't at 18.

Commonwealth argues the two provisions have different language and the legislature would not have enacted two different provisions if it had wanted them to be applied the same way. Br. of Resp't at 21 (citing 72 P.S. § 7401(3)2.(a)(16) & (17)).

The Commonwealth further observes that Subparagraph 17(B) expressly requires a costs-of-performance analysis if income-producing activities for sales of services occur both inside and outside of Pennsylvania. The Commonwealth contends that the Department's interpretation of Subparagraph 17 would render this requirement of Subparagraph 17(B) meaningless. (However, as discussed above, the Department explained that Subparagraphs 17(A) and (B) apply in different situations.)

The Commonwealth concedes Subparagraph 17 is a verbatim adoption of the language of Section 17 of the Uniform Act. However, the Commonwealth argues that Section 17 of the Uniform Act has drawn criticism because changes in economics, developing technology, and increasing globalization allow both goods and services to be supplied remotely to a much greater degree than was possible when the Uniform Act was originally drafted in the 1950s.

In 2014, the Multistate Tax Commission (Commission), created in 1967 to promote uniform taxation of multistate businesses, recommended amending Section 17 of the Uniform Act to a rule clearly sourcing service receipts to the state in which services were delivered. In other words, the Commission recommended an amendment clarifying application of the benefits-received rule, which the Department was already applying.

Pennsylvania's legislature enacted the recommended amendment to Subparagraph 17 effective January 1, 2014. For calculation of the sales factor,

service receipts[16] are now expressly sourced to Pennsylvania "if the service is delivered to a location in this State. If the service is delivered both to a location in and outside this State, the sale is in this State based upon the percentage of total value of the service delivered to a location in this State." *See* Act of July 9, 2013, P.L. 270, 72 P.S. § 7401(3)2.(a)(16.1)(C)(I).

The Commonwealth argues there would have been no need for the legislature to amend Subparagraph 17 if it already provided for application of the benefits-received method as the Department claims. Therefore, the Commonwealth insists the legislature's amendment of Subparagraph 17 in 2014 demonstrates that the pre-2014 version of Subparagraph 17 was not intended to have the meaning ascribed to it by the Department. The Commonwealth also asserts that although the legislature amended Subparagraph 17 regarding sales of services, the costs-of-performance method continues to apply to sales of intangibles. The Commonwealth contends this further demonstrates that the legislature previously intended the pre-2014 Subparagraph 17 to apply the costs-of-performance method to sales of services.

In contrast to the Department's citation of *Gilmour* as analogous, the Commonwealth cites *RB Alden Corp. v. Commonwealth*, 142 A.3d 169 (Pa. Cmwlth. 2016), in which it contends this Court construed Subparagraph 17 in terms of performance costs, without mentioning the benefits-received method. We find the Commonwealth's contention unpersuasive. *RB Alden* concerned taxation on the capital gain from the sale of a partnership interest. At issue was whether the proceeds of the sale should be sourced to New York, where the partnership (a

---

[16] The pre-2014 language of Subparagraph 17 continues to apply to sales other than those under Subparagraphs 16 (sales of tangible personal property) and 16.1 (the amended provision regarding sales of services). *See* 72 P.S. § 7401(3)2.(a)(17). Subparagraph 16.1 was added by the Act of July 9, 2013, P.L. 270.
**(Footnote continued on next page…)**

15

Delaware taxpayer) was headquartered, or Pennsylvania, where the real property from which the sale was derived was located.[17] *Id*. at 172. The taxpayer argued that "all of the activities associated with the acquisition, holding and disposition of the [p]artnership interest occurred at the headquarters in New York." *Id.* at 179.

However, this Court found in *RB Alden* that the taxpayer's income-producing activity, which was its operation and management of the real property from which the sale was derived, occurred in Pennsylvania, where the property was located. *Id.* This Court observed further that the costs related to performing the taxpayer's management services were also generated in Pennsylvania. Thus, both the costs of performing management services and the benefits of those services arose in Pennsylvania. *Id.* Accordingly, a choice between the costs-of-performance method and the benefits-received method under Subparagraph 17 was not at issue in *RB Alden*.

The Commonwealth counters the Department's citation of decisions from other states applying the benefits-received method with its own list of decisions it claims have applied, either explicitly or implicitly, the costs-of-performance method. *See* Br. of Resp't at 29-30 (citing *Univ. of Phoenix, Inc. v. Ind. Dep't of State Revenue*, 88 N.E.3d 805, 810-12 (Ind. T.C. 2017); *AT&T Corp. v. Dep't of Revenue*, 358 P.3d 973, 982 (Or. 2015); *Comcast Holdings Corp. v. Tenn. Dep't of Revenue* (Tenn. Ct. App. No. M2017-02250-COA-R3-CV, filed April 25, 2019), 2019 Tenn. App. LEXIS 193; *Corp. Exec. Bd. Co. v. Va. Dep't of Taxation*, 822 S.E.2d 918, 921-23, 930 (Va. 2019)). *University of Phoenix* concerned an Indiana tax provision that specifically related to telecommunications and broadcast services and spoke expressly and exclusively in terms of costs of performance, regardless of whether

_____

[17] Also at issue, although not relevant here, was whether the sale of the partnership interest generated business income or non-business income.

16

such costs were incurred inside or outside of Indiana. *See Univ. of Phoenix*, 88 N.E.3d at 812 (citing Ind. Code § 6-3-2-2(f)(2)). *AT&T* and *Comcast* applied state statutes that, unlike the Tax Code in Pennsylvania, expressly defined both "income-producing activity" and "costs of performance." *AT&T*, 358 P.3d at 983-84 (quoting Or. Rev. Code 150-314.665(4)(2), (4)); *Comcast*, slip op. at __, 2019 Tenn. App. LEXIS 193 at *29-*31 (quoting Tenn. Comp. R. & Regs. 1320-06-01-.34). In *Corporate Executive Board*, the court specifically observed that "there is no standard market sourcing rule akin to the cost-of-performance rule that used to be more prevalent." *Corp. Exec. Bd.*, 822 S.E.2d at 929. Rather, various states apply various rules, including the benefits-received approach, and in each state, differences may exist even where the same approach is applied. *Id.* Thus, these decisions do not advance the Commonwealth's position.

The Commonwealth also asserts that the Indiana Tax Court's decision in *University of Phoenix* surveyed decisions from around the country and opined that the benefits-received method was supportable in states where a statute or a regulation imposed that interpretation. Br. of Resp't at 31 (citing *Univ. of Phoenix*, 88 N.E.3d at 813). The Commonwealth posits that because the Department has not formally enacted such a regulation, the costs-of-performance method necessarily applies to corporate taxpayers in Pennsylvania. However, *University of Phoenix* does not stand for such a proposition, and we are not persuaded by the Commonwealth's reasoning.

### 3. Ambiguity of Subparagraph 17

A statute is ambiguous when it is reasonably susceptible of more than one interpretation or its language is vague, uncertain, or indefinite. *McCloskey v. Pa. Pub. Util. Comm'n*, 219 A.3d 692 (Pa. Cmwlth. 2019). Here, the Department and the Commonwealth assert differing interpretations of Subparagraph 17. Both are

facially reasonable, especially because the Tax Code fails to define the terms "income-producing activity" and "costs of performance." We therefore conclude Subparagraph 17 is ambiguous. *Accord AT&T Corp.*, 358 P.3d at 982 ("[c]ommentators have routinely criticized [Section 17 of the Uniform Act] for its ambiguity").

When a statute is ambiguous, courts generally defer to the expertise of the agency charged with interpretation and enforcement responsibilities with respect to that statute. In this case, that agency is the Department. *See Stodghill v. Pa. Dep't of Corr.*, 150 A.3d 547, 554 (Pa. Cmwlth. 2016) (citing 1 Pa. C.S. § 1921(c)(8); *Packer v. Bureau of Prof'l & Occupational Affairs, Dep't of State, State Bd. of Nursing*, 99 A.3d 965, 969 (Pa. Cmwlth. 2014), *overruled on other grounds by McGrath v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing*, 146 A.3d 310 (Pa. Cmwlth. 2016); *Velocity Express v. Pa. Human Relations Comm'n*, 853 A.2d 1182, 1185 (Pa. Cmwlth. 2004)). Deference applies unless the agency's interpretation of its enabling statute is erroneous or frustrates the legislature's intent. *Stodghill*, 150 A.3d at 554 (citing *Packer*; *Rosen v. Bur. of Prof. & Occupational Affairs, State Architects Licensure Bd.*, 763 A.2d 962, 968 (Pa. Cmwlth. 2000)).

The Commonwealth contends that the Department's interpretation of Subparagraph 17 is not entitled to deference because it frustrates the legislature's intent. The Commonwealth points to the legislature's amendment of Subparagraph 17 in 2014 to provide clearly for application of the benefits-received method. The Commonwealth argues that amendment would have been pointless if Subparagraph 17 already required application of the benefits-received method. Thus, the Commonwealth asserts there was no other possible reason for the amendment other than to disapprove the Department's prior interpretation of the pre-2014 version of

18

Subparagraph 17. Therefore, the Commonwealth posits that the Department's interpretation of Subparagraph 17 prior to its amendment must have been incorrect.

However, it is undisputed that the Department has consistently interpreted Subparagraph 17 as applying the benefits-received method for many years. The legislature acquiesced in that interpretation. In fact, the legislature's amendment of Subparagraph 17 clarified, rather than altered, the application of the benefits-received method the Department was already applying and enforcing. When the legislature amends a statute that has been the subject of a longstanding administrative interpretation, but does not revise or repeal the agency's interpretation, this is evidence that the legislature has acquiesced in the interpretation and that the interpretation is, in fact, the one the legislature intended. *Gilligan v. Pa. Horse Racing Comm'n*, 422 A.2d 487, 491 (Pa. 1980). We reject the Commonwealth's argument that the legislature's amendment of Subparagraph 17 disapproved the Department's longstanding interpretation, because we find the legislative amendment did not change that interpretation, but merely eliminated any previous ambiguity, as recommended by the Commission.

We conclude that the Department's interpretation of Subparagraph 17 is not contrary to the legislature's intent. Therefore, we uphold the Department's application of the benefits-received method of calculating the sales factor. Inasmuch as the Commonwealth concedes that Synthes met its burden of showing entitlement to a refund under the benefits-received method, we reverse the Board's decision and remand this matter for issuance of the appropriate tax refund to Synthes for tax year 2011.

19

## E. Uniformity Clause

Finally, because we agree with Synthes that it is entitled to the tax refund it seeks, we do not address its alternate argument under the Uniformity Clause. "'When a case raises both a constitutional and a non-constitutional issue, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds.'" *Commonwealth v. Martinez*, 147 A.3d 517, 530 (Pa. 2016) (quoting *P.J.S. v. Pa. State Ethics Comm'n*, 723 A.2d 174, 176 (Pa. 1999)).

## IV. Conclusion

Based on the foregoing discussion, we grant the Department's application to intervene. Further, we find that the Department's interpretation of Subparagraph 17, rather than the Commonwealth's interpretation, is correct. Therefore, Synthes is entitled to the tax refund it seeks. Accordingly, we reverse the Board's decision and remand to the Board for further remand to the Department to issue the appropriate tax refund.

_____<br>
ELLEN CEISLER, Judge

Judge Cohn Jubelirer dissents and wishes to be so noted.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Synthes USA HQ, Inc.,          :
          Petitioner     :
                              :
      v.                   :   No. 108 F.R. 2016
                              :
Commonwealth of Pennsylvania,   :
         Respondent   :

# **O R D E R**

AND NOW, this 24th day of July, 2020:

The application of the Pennsylvania Department of Revenue (Department) for intervention is GRANTED.

The order of the Commonwealth of Pennsylvania, Board of Finance and Revenue (Board), is REVERSED.

This matter is REMANDED to the Board, and the Board is directed to remand this matter to the Department for issuance of a tax refund to Synthes USA HQ, Inc. for tax year 2011, in an amount to be determined by the Department consistent with the foregoing opinion.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

Jurisdiction is relinquished.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Synthes USA HQ, Inc.,      :
               Petitioner   :
                         :
      v.               :   No. 108 F.R. 2016
                         :   Argued: June 11, 2020
                         :
Commonwealth of Pennsylvania,  :
               Respondent  :

BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge

**CONCURRING OPINION**
**BY JUDGE BROBSON**         **FILED:  July 24, 2020**

I wholeheartedly embrace the majority's disposition of this matter.  I write separately to emphasize my agreement with the majority's conclusion that the Pennsylvania Office of Attorney General overstepped its authority under the Commonwealth Attorneys Act (CAA)[1] by assuming the mantles of both counsel and client.

Section 204(c) of the CAA, 71 P.S. § 732-204(c), provides, in relevant part, that the Attorney General "*shall represent* the Commonwealth and all Commonwealth agencies . . . in any action brought by or against the Commonwealth or its agencies."  (Emphasis added.)  This Court has noted:  "The Commonwealth

---

[1] Act of October 15, 1980, P.L. 950, 71 P.S. §§ 732-101 to -506.

acts through the General Assembly and through the Commonwealth's various agencies . . . and its departments . . . . Each of these entities is part of the Commonwealth . . . ." *In re Condemnation No. 2 by Cmwlth. ex rel. Dep't of Gen. Servs.*, 943 A.2d 997, 1001 (Pa. Cmwlth. 2007), *appeal denied*, 954 A.2d 578 (Pa.), *cert. denied sub nom. Ate Kays Co. v. Pa. Dep't of Gen. Servs.*, 555 U.S. 1070 (2008). As the majority astutely points out, in matters of taxation, the General Assembly, through legislation, has empowered the Department of Revenue (Department), not the Office of Attorney General, to act for the Commonwealth. (*See* Maj. Op. at 5.) "[T]he Department . . . is charged with execution and application of the" Tax Reform Code of 1971 (Tax Code).[2] *Phila. Gas Works ex rel. City of Phila. v. Cmwlth.*, 741 A.2d 841, 844 (Pa. Cmwlth. 1999), *aff'd*, 757 A.2d 360 (Pa. 2000).

"[W]hen the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters . . . . [U]nless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns." *Pa. Game Comm'n v. Dep't of Envtl. Res.*, 555 A.2d 812, 815 (Pa. 1989) (discussing agency standing). Recognizing this legislative designation of agency interests, we have specifically held that Section 204(c) of the CAA "does not vest in the Attorney General the administrative agency power to investigate or enforce a particular statute" or "to *become* the agency itself," but only "to serve as the agency's lawyer in actions at law or in equity." *Trometter v. Pa. Labor Relations Bd.*, 147 A.3d 601,

---

[2] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

**(Footnote continued on next page…)**

608 (Pa. Cmwlth. 2016) (emphasis in original).[3] It would be incongruous to construe the Attorney General's duty under Section 204(c) to "represent" the Commonwealth in legal proceedings as authority for the Attorney General to override, as it has done in this matter, the voice of the legislatively designated Commonwealth agency on a particular subject matter.

Here, there is no dispute between Synthes USA HQ, Inc. (Synthes), the appealing taxpayer, and the Department, acting for the Commonwealth as its legislatively authorized agent, as to the proper interpretation of the Tax Code provision that governs this tax dispute. The Board of Finance and Revenue (Board) applied the Department's interpretation, and Synthes does not challenge that aspect of the Board's decision on appeal. As the parties agree that Synthes has met its evidentiary burden and is entitled to a refund under the Commonwealth's current interpretation of the applicable provision of the Tax Code, I concur in the majority's disposition to reverse and remand. I would reach this result, however, without entertaining the Office of Attorney General's collateral attack on *the Commonwealth's* longstanding construction of the Tax Code provision. (Maj. Op. at 8-19.)

P. KEVIN BROBSON, Judge

---

[3] In *Trometter*, we rejected an argument by the Pennsylvania Labor Relations Board that Section 204(c) of the CAA somehow vests the Attorney General with authority to pursue an agency's legislative mandates. *Trometter*, 147 A.3d at 608. Instead, we held that Section 204(c) "provides only that the Attorney General must provide *legal representation* to the [Pennsylvania Labor Relations] Board in litigation" and makes the Attorney General "[*the agency's*] lawyer by statutory default." *Id.* (second emphasis added).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Synthes USA HQ, Inc., : 
 : 
               Petitioner : 
 : 
         v. : No. 108 F.R. 2016
 : Argued: June 11, 2020
Commonwealth of Pennsylvania, : 
 : 
            Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge


CONCURRING AND DISSENTING OPINION
BY JUDGE WOJCIK                    FILED: July 24, 2020


Section 204(c) of the Commonwealth Attorneys Act (CAA)[1] states, in relevant part, "The Attorney General shall represent the Commonwealth and all Commonwealth agencies and upon request, the Department[] of . . . State Treasury . . . in any action brought by or against the Commonwealth or its agencies[.]" Additionally, Section 401 of the CAA states, "Each independent agency may appoint . . . a chief counsel and such assistant counsel as it deems necessary to provide it with legal assistance or request such legal services from the Office of General Counsel." 71 P.S. §732-401. Moreover, Section 204(c) also provides, "The

---

[1] Act of October 15, 1980, P.L. 950, 71 P.S. §732-204(c).

Attorney General may, upon determining that it is more efficient or otherwise is in the best interest of the Commonwealth, authorize the General Counsel or the counsel for an independent agency to . . . conduct or defend any particular litigation . . . in his stead."[2]

However, Section 403 of the CAA addresses the interplay between the Attorney General's representation of the Commonwealth's and an agency's interests in a matter, and the agency's representation of its own interests, stating:

> **(a) Representation of agency by agency counsel.—** Whenever any action is brought by or against any independent agency[], the agency head may request in writing, setting forth his reasons, the Attorney General to authorize the agency counsel to supersede the Attorney General and represent the agency[.]
>
> **(b) Intervention by agency counsel.—**If the Attorney General does not grant the request, the agency head may authorize the agency counsel to intervene in the litigation. Such intervention shall be a matter of right and when exercised, confer upon the agency counsel the obligation to represent the agency. The Attorney General shall at all times continue to represent the Commonwealth.

71 P.S. §732-403.

The import of the foregoing provision was explained by the Pennsylvania Supreme Court, as follows:

> As [the Pennsylvania Turnpike Commission (Commission)] counsel concedes, [S]ection 204(c) of the [CAA], 71 P.S. §732–204(c), gives the Attorney General both the right and duty to assume the representation of the [Commission] when it has been sued. Section 403 of the

---

[2] *See also* Section 402(2) of the CAA, 71 P.S. §732-402(2) ("The chief counsel . . . [m]ay request the assistance of the General Counsel or the Attorney General, or both of them, in any matter or action involving the agency. If advice is requested from the Attorney General, such advice when received *shall be followed by the agency*[.]") (emphasis added).

[CAA], while permitting the Attorney General to delegate that duty to agency counsel upon request, in no way affects the continued right of the Attorney General to represent the agency if he so chooses. The concluding language of [Section] 403(b) makes this clear by providing that the Attorney General shall "continue to represent the Commonwealth" when agency counsel intervenes. The preceding sentence, which states that the agency counsel shall be obligated to represent the agency when the right of intervention is exercised, speaks only to the duty of the agency counsel as intervenor, not to the position of the Attorney General in the litigation. Thus it is apparent that [S]ection 403(b) does not compel the ouster of the Attorney General when agency counsel intervenes. Rather, the [CAA] contemplates the possibility of dual representation where the Attorney General and the members of an agency disagree as to the agency's interests or where . . . the members of an agency are themselves unable to agree upon the agency's interests and the Attorney General disagrees with the agency's chairman.

*Fidelity Bank v. Pennsylvania Turnpike Commission*, 444 A.2d 1154, 1160-61 (Pa. 1982).

Based on the foregoing, I strongly disagree with the majority's assertion that the Attorney General, while representing the interests of the Commonwealth, the Treasury Department, and the Department of Revenue in this matter, acted inappropriately by presenting a legal argument that conflicts with the position of the Department of Revenue below or that of the Office of General Counsel in its representation of the Department of Revenue on appeal. The CAA clearly and explicitly[3] confers upon the Attorney General the primary authority to determine and

---

[3] *See, e.g.*, Section 1921(a) of the Statutory Construction Act of 1972 (Construction Act), 1 Pa. C.S. §1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."); *Pennsylvania Gaming Control Board v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014) ("[S]tatutory language must be read in context, that is, in ascertaining legislative intent, every portion of statutory language is to be read 'together and in
**(Footnote continued on next page…)**

present to this Court what he perceives those interests to be, in spite of what the Department of Revenue or the Treasury Department may perceive them to be, and specifically contemplates dual representation of the agencies where those perceived interests are conflicting. The majority's contrary conclusion is patently incorrect. Nevertheless, based on the conflicting legal positions, the majority correctly granted the Department of Revenue's application to intervene in this case, via representation by the Office of General Counsel, to present its own interests in this matter.

On the merits, I believe that the Attorney General has presented a convincing argument that although the Department of Revenue erred in its pre-amendment application of the Tax Reform Code of 1971[4] (Tax Code) in disposing of Synthes USA HQ, Inc.'s (Taxpayer) petition for a refund of its corporate net income tax (CNIT) paid for the 2011 tax year, the Board of Finance and Revenue's (F&R) order denying Taxpayer's petition for review of the Department of Revenue's Board of Appeal's order should be affirmed nonetheless.[5] Taxpayer calculated its

---

conjunction' with the remaining statutory language, 'and construed with reference to the entire statute' as a whole.") (citation omitted).

[4] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§7101-10004.

[5] As we have explained:

> This Court's review in this matter is "*de novo* in nature, with no record being certified by [F&R]." Pa. R.A.P. 1571. "Although the Court hears these cases under its appellate jurisdiction, the Court functions essentially as a trial court." Our decision is based on either a record created before this Court or, as in this case, stipulated facts.

*General Motors Corporation v. Commonwealth*, 222 A.3d 454, 459 n.3 (Pa. Cmwlth. 2019) (citations omitted). Additionally, "[t]his Court has held that a reviewing court may affirm an order of an administrative agency if it is correct for any reason regardless of the reasons given by the **(Footnote continued on next page…)**

CNIT for the 2011 tax year based, in part, on the definition of "Taxable income" provided in Section 401(3)2.(a)(17) (Subparagraph 17) of the Tax Code,[6] which was applicable before the General Assembly amended the Tax Code in 2013 by adding Section 401(3)2.(a)(16.1)(C) (Subparagraph 16.1).[7]   On its return, Taxpayer

---

tribunal whose order is under review." *Millvale Health Center, Inc. v. Department of Public Welfare*, 538 A.2d 625, 627 (Pa. Cmwlth. 1988) (citation omitted).

[6] 72 P.S. §7401(3)2.(a)(17).  Section 401(3)2.(a)(17), defining "Taxable income," states, in relevant part:

> 2.  In case the entire business of any corporation . . . is not transacted within this Commonwealth, the tax imposed by this article shall be based upon such portion of the taxable income of such corporation for the fiscal or calendar year . . . and may be determined as follows
>
> (a)  Division of Income.
>
> * * *
>
> (17)  Sales . . . are in this State if:
>
> (A)  The income-producing activity is performed in this State; or
>
> (B)  The income-producing activity is performed both in and outside this State and a greater proportion of the income-producing activity is performed in this State than in any other state, *based on costs of performance*.  [(Emphasis added.)]

[7] Added by the Act of July 9, 2013, P.L. 270, 72 P.S. §7401(3)2.(a)(16.1)(C). Subparagraph 16.1 states, in relevant part:

> (C)(I)  Sales from the sale of service, if the service is delivered to a location in this State.  If the service is delivered both to a location in and outside this State, the sale is in this State based upon the percentage of total value of the service delivered to a location in this State.

**(Footnote continued on next page…)**

properly applied Subparagraph 17 for apportioning income, including a sales factor among the three factors, and sourced all receipts to Pennsylvania because the greatest proportion of the costs of performing the services at issue was incurred here. This computation method, the "costs-of-performance" method, is inconsistent with the Department's interpretation of Subparagraph 17, applying the "benefits-received" method for these services, as subsequently provided for in Subparagraph 16.1 and applicable to Taxpayer's CNIT following its enactment. *See generally Honigman Miller Schwartz and Cohn LLP v. City of Detroit*, ___ N.W.2d ___, ___ (Mich., Dkt. No. 157522, filed May 18, 2020), slip op. at 8-10 (outlining the evolution from the application of the costs-of-performance method to the benefits-received method of calculating CNIT for income derived from providing multistate services under the relevant Michigan tax statute); *University of Phoenix, Inc. v. Indiana Department of State Revenue*, 88 N.E.3d 805, 811-13 (Ind. T.C. 2017) (analyzing a number of states' interpretation of similar provisions and applying the costs-of-performance method under the relevant Indiana tax statute).

To my mind, the General Assembly's 2013 enactment of Subparagraph 16.1, while keeping Subparagraph 17 intact, demonstrates a legislative intent to alter

---

(II) If the state or states of assignment under unit (I) cannot be determined for a customer who is an individual that is not a sole proprietor, a service is deemed to be delivered at the customer's billing address.

(III) If the state or states of assignment under unit (I) cannot be determined for a customer, except for a customer under unit (II), a service is deemed to be delivered at the location from which the services were ordered in the customer's regular course of operations. If the location from which the services were ordered in the customer's regular course of operations cannot be determined, a service is deemed to be delivered at the customer's billing address.

**(Footnote continued on next page…)**

the calculation of CNIT for income received for the sale of services from the costs-of-performance method to the benefits-received method by specifically adding this provision to the Tax Code, and by specifically excepting the application of Subparagraph 17 to income within the ambit of Subparagraph 16.1.[8]  *See, e.g.*, *Masland v. Bachman*, 374 A.2d 517, 521 (Pa. 1977) ("A change in the language of a statute ordinarily indicates a change in legislative intent."); *Haughey v. Dillon*, 108 A.2d 69, 72 (Pa. 1954) ("A change of language in subsequent statutes on the same matter indicates a change of legislative intent.  *Commonwealth v. Lowe Coal Co.*, [145 A. 916, 918-19 (Pa. 1929)].  Why else would the legislature change the language?").  *See also* Section 1921(c)(5) of the Construction Act, 1 Pa. C.S. §1921(c)(5) ("When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters . . . [t]he former law, if any, including other statutes upon the same or similar subjects."); Section 1928(b)(3) of the Construction Act, 1 Pa. C.S. §1928(b)(3) ("All provisions of a statute of the classes hereafter enumerated shall be strictly construed: . . . (3) Provisions imposing taxes.").

As a result, the Department of Revenue's grant of Taxpayer's refund application for the 2011 tax year would be void because its interpretation of Subparagraph 17 as requiring an assessment based on the benefits-received method of allocation is not supported by the express language of the applicable Tax Code provision in effect at that time.  *See* 72 P.S. §7401(3)2.(a)(17) ("Sales . . . are in this State if . . . [t]he income-producing activity is performed in this State; or . . . [it] is

---

[8] The only amendment to Subparagraph 17 that was made by Section 19 of the Act of July 9, 2013, P.L. 270, was the replacement of the phrase "other than sales of tangible personal property" in the first line with the phrase "other than sales under paragraphs (16) and (16.1)."  No amendments were made to the relevant provisions of Subparagraph 17 that are stated above and that are at issue in this matter.

performed both in and outside this State and a greater proportion . . . is performed in this State than in any other state, *based on costs of performance*.") (emphasis added). As this Court has previously explained:

> It is well-settled that administrative agencies, such as the Department, are creatures of the General Assembly and can only exercise the powers that are conferred upon them by statute. *Small v. Horn*, [722 A.2d 664, 669 (Pa. 1998)]; *Capital BlueCross v. Pennsylvania Ins. Dep't*, 937 A.2d 552, 569 (Pa. Cmwlth. 2007)[.] The Department thus acts *ultra vires* when it acts either without statutory authority or contrary to statutory authority.

*Grimaud v. Pennsylvania Insurance Department*, 995 A.2d 391, 405 (Pa. Cmwlth. 2010). *See also SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Board*, 162 A.3d 353, 375-76 (Pa. 2017) ("[A]lthough we accord an administrative agency such as the [Gaming] Board substantial deference in construing the laws it is tasked with administering, 'we need not defer uncritically, particularly if we find that the interpretation is imprudent or inconsistent with legislative intent.'") (citation omitted).[9]

---

[9] The Attorney General also sets forth a convincing argument that rejecting the Department of Revenue's past incorrect interpretation of Subparagraph 17, and directing a correct interpretation for the relevant tax year, does not present a Uniformity Clause issue. *See Commonwealth v. Westinghouse Electric Corporation*, 386 A.2d 491, 494 (Pa. 1978), wherein the Supreme Court stated:

> Even if the Commonwealth erred in allowing the two corporations to deduct the foreign taxes, these isolated instances of taxpayers receiving deductions through the mistakes of the Commonwealth's employees should not serve as a justification for this Court's extension of relief and further mistake to appellant. The fact remains that "no errors or misinformation of (the Commonwealth's) officers or agents can estop the government from collecting taxes legally due." *Commonwealth v. Western Maryland Railway*[ *Co.*, 105 A.2d 336, 341 (Pa. 1954)]. Moreover, appellant

**(Footnote continued on next page…)**

Accordingly, like the majority, I would grant the Department of Revenue's application to intervene in this matter; however, unlike the majority, I would affirm F&R's order on the merits.


_____
MICHAEL H. WOJCIK, Judge

Judge Cohn Jubelirer joins in this Concurring/Dissenting Opinion.

---

failed to meet its burden of proving that the Commonwealth deliberately and purposefully discriminated against appellant.

*See also Stilman v. Tax Review Board, City of Philadelphia*, 166 A.2d 661, 662-63 (Pa. 1961) ("[T]o establish a denial of constitutional rights-in situations such as this-there must be a deliberate and purposeful discrimination in the application of the tax. Prior error by an administrative official when interpreting a valid tax statute is insufficient, in itself, to constitute a violation of the rights of due process and equal protection of the laws.") (citation omitted).