# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| Mary Trometter, | : | | |
| Petitioner | : | | |
| | : | | |
| v. | : | No. 1484 C.D. 2015 | |
| | : | Argued: June 9, 2016 | |
| Pennsylvania Labor Relations Board, | : | | |
| Respondent | : | | |

**BEFORE:** HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION BY JUDGE BROBSON**          **FILED:  September 8, 2016**

Petitioner Mary Trometter (Trometter) petitions for review of an order of the Pennsylvania Labor Relations Board (Board), in which the Board transferred to the Office of Attorney General Trometter's report of a possible violation of Section 1701 of the Public Employe Relations Act (PERA).[1]  We now reverse and remand the matter for further action by the Board.

Article XVII of PERA, titled "Employe Organizations," contains but one section—Section 1701.  PERA defines an "employe organization" as follows:

> **"Employe Organization"** means an organization of any kind, or any agent or employe representation committee or plan in which membership includes public employees, and which exists for the purpose, in whole or in apart, of dealing with employers concerning grievances, employe-employer disputes, wages, rates of

---

[1] Act of July 23, 1970, P.L. 563, 43 P.S. §1101.1701.

pay, hours of employment, or conditions of work but shall not include any organization which practices discrimination in membership because of race, color, creed, national origin or political affiliation.

Section 301(3) of PERA, 43 P.S. § 1101.301(3). In layperson's terms, an "employe organization" under PERA is a public sector union. Section 1701 of PERA includes six unnumbered paragraphs. The first paragraph provides the following prohibition:

[1] No employe organization shall make any contribution out of the funds of the employe organization either directly or indirectly to any political party or organization or in support of any political candidate for public office.

What follows this prohibition are five paragraphs relating to implementation and enforcement of this prohibition:

[2] The board shall establish such rules and regulations as it may find necessary to prevent the circumvention or evasion of the provisions of this section.

[3] If an employe organization has made contributions in violation of this section it shall file with the board a report or affidavit evidencing such contributions within ninety days of the end of its fiscal year. Such report or affidavit shall be signed by its president and treasurer or corresponding principals.

[4] Any employe organization which violates the provisions of this section or fails to file any required report or affidavit or files a false report or affidavit shall be subject to a fine of not more than two thousand dollars ($2,000).

[5] Any person who willfully violates this section, or who makes a false statement knowing it to be false, or who knowingly fails to disclose a material fact shall be fined not more than one thousand dollars ($1,000) or imprisoned for not more than thirty days or both. Each individual required to sign affidavits or reports under this section shall be personally responsible

2

for filing such report or affidavit and for any statement contained therein he knows to be false.

> [6] Nothing herein shall be deemed to prohibit voluntary contributions by individuals to political parties or candidates.

Section 1701 of PERA.

The Board has promulgated two regulations dealing specifically with Section 1701 of PERA. The first, 34 Pa. Code § 95.111, relates to the reporting obligation under paragraph 2 of Section 1701. The second, and relevant to this matter, provides:

> (a) An individual who has knowledge of a political contribution or other activity by an employe organization thought to be in violation of section 1701 of the act (43 P.S. § 1101.1701) may file a report with the Board. The report shall be signed and sworn to before any person authorized to administer oaths.

> (b) The report shall contain the following information:

> (1) The name, address, telephone number and affiliation, if any, of the charging party.

> (2) A clear and concise statement of the facts constituting the alleged illegal contribution, including the names of the individuals involved, the name of the employe organization, and the time, place of occurrence and nature of each particular contribution or act alleged.

> (c) Upon receipt of the report, if it appears to the Board that an investigation in respect to the charge should be instituted, the Board shall refer the report to the Attorney General of the Commonwealth for proceedings under applicable statutes.

34 Pa. Code § 95.112.

Following Section 95.112(a) of the Board's regulations, on November 18, 2014, Trometter filed a report with the Board, alleging that

3

Intervenors the National Education Association (NEA) and/or the Pennsylvania State Education Association (PSEA) (Unions) violated Section 1701 of PERA through paid advocacy on behalf of then-candidate Tom Wolf's 2013 campaign to become governor of the Commonwealth of Pennsylvania. Trometter is a dues-paying member of PSEA. The report appears to be prepared on a form supplied by the Board and titled "Charge of Illegal Contribution(s) Under the Public Employe Relations Act." (Reproduced Record at 1a-3a.)

In the report, Trometter alleges that the Unions sent a letter to her husband, recommending that he, as the spouse of an educator, "join Mary [Trometter] in voting for Tom Wolf for Governor." The letter provided that the "NEA Advocacy Fund, the NEA's SuperPAC" paid for the letter. Trometter alleges that, according to reports filed with the Federal Election Commission, during the 2013 election year the NEA gave over $12 million, made up in whole or in part of union dues money, to the NEA's SuperPAC. (R.R. at 2a.) Trometter asserts that the NEA made an illegal "contribution" under Section 1701 of PERA by funding the letter. Trometter also asserted that PSEA violated Section 1701 of PERA by including endorsements of Tom Wolf's candidacy in a PSEA magazine, *Voice*, which is funded by member dues.

The Board issued an "Acknowledgement and Notice of Filing" (Acknowledgment) with respect to Trometter's report on November 19, 2014, which directed the Unions to file and serve an answer. They did so on November 19, 2014. (R.R. 53a-65a.) In their answer, the Unions suggested that no violation of Section 1701 of PERA had occurred through the funding and/or content of the letter or the magazine. The Unions, noting that PERA does not define the term "contribution," urged the Board to apply the common meaning of

the term, which they contended means money or gifts or something else of value given to a political candidate's campaign, and to conclude, based on this definition, that the Unions did not make an illegal contribution under Section 1701 of PERA. Additionally, the Unions asserted that applying Trometter's suggested interpretation of Section 1701 of PERA would create a conflict with Section 1633(c) of the Pennsylvania Election Code,[2] which, the Unions argued, provides that no law of the Commonwealth shall prohibit direct communications between a labor organization and its members and their families. A rebuttal on behalf of Trometter (January 21, 2015) and Unions' sur-reply (January 21, 2015) followed.

Six months later, following a conference call meeting of the Board on July 21, 2015, the Board issued the order that is the subject of this appeal, titled "Order Transferring Report to Attorney General Pursuant to 34 Pa. Code §95.122" (Transfer Order). In the Transfer Order, the Board summarizes the respective positions of the parties, but does not resolve any of the legal issues/arguments raised by the parties in their filings with the Board. Instead, the Board concludes that Trometter "misconstrues the Board's role in the application of Section 1701 of PERA by requesting that the Board impose the statutory penalties of fines, imprisonment or both." (Transfer Order at 2.) The Board, citing its decision in *Pennsylvania Labor Relations Board v. Pittsburgh Federation of Teachers, Local 400, AFT, AFL-CIO*, 7 PPER 198 (1976), opined that the Board's functions under Section 1701 of PERA do not include determining whether a violation of

___

[2] Act of June 3, 1937, P.L. 1333, added by the Act of October 4, 1978, P.L. 893, *as amended*, 25 P.S. § 3253(c).

5

that provision has occurred. *Id*. Rather, the Board wrote, it is charged with developing rules and regulations for the "disposition" of alleged violations. *Id*. It did so when it promulgated 34 Pa. Code § 95.112(c). Accordingly, pursuant to that regulation, it transferred the matter "to the Attorney General of the Commonwealth of Pennsylvania for proceedings under applicable statutes."

In her petition for review of the Transfer Order,[3] raising the following issues: (1) whether the Board erred in concluding that it has no investigatory or enforcement powers to act upon reports of alleged violations of Section 1701 of PERA; (2) whether the Board's referral provision, 34 Pa. Code § 95.112, is valid and/or consistent with Section 1701 of PERA; and (3) whether the Board erred in its application of the Board's referral provision, 34 Pa. Code § 95.112. Trometter, the Unions, and the Board seek three distinct types of relief in this appeal. Trometter seeks an order reversing the Board's decision and returning the matter to the Board for investigation and potential adjudication of the alleged impermissible contributions. The Board seeks an order affirming its referral of the matter to the Office of Attorney General. The Unions seek an order "denying" the petition for review, seeking a holding from this Court that Section 1701 cannot be applied, as a

---

[3] Although it appears that this Court has not previously reviewed a decision of the Board referring a matter to the Office of Attorney General, we believe our review is limited to considering whether the Board erred as a matter of law or abused its discretion in referring the matter. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704, provides for our review of errors of law. *See also Farmer v. Commonwealth*, 750 A.2d 925 (Pa. Cmwlth.), *appeal denied*, 795 A.2d 980 (Pa. 2000) (holding that review of trial court order addressing prosecution by Office of Attorney General of alleged statutory violations of Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101-.1003, referred to Office of Attorney General by Department of Environmental Protection limited to error of law and abuse of discretion).

6

matter of law, to restrict the Unions' communications with its members and their families or to limit the NEA's transfer of funds to its SuperPAC.[4]

Initially, we decline the Unions' request to address the merits of Trometter's report to the Board, which includes any of the Unions' legal defenses with respect thereto. The only order on appeal to the Court is the Transfer Order, and the only governmental action to be reviewed therein is the transfer of Trometter's report to the Office of Attorney General. We, therefore, will not consider the merits of Trometter's claims in her report or the Unions' response and defenses thereto.

Turning to the issues that are properly before the Court, we consider Trometter's legal challenge to the Transfer Order. At base, Trometter argues that Section 1701 of PERA empowers the Board to enforce its provisions. The Board, in response, argues that it lacks the authority to do so *in toto*, but particularly with respect to the criminal penalty provisions under paragraph 5. To resolve this conflict, we must ascertain the General Assembly's intent. As this Court has often recognized, the plain words of a statute generally present the clearest indication of legislative intent. *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). When such clarity exits, courts are directed to refrain from disregarding the letter of the law under the pretext of attaining its spirit. 1 Pa. C.S. § 1921(c). Thus, it is only when a statute is imprecise or not explicit—*i.e.* ambiguous, that courts may resort to tools of statutory construction. 1 Pa. C.S. § 1921(c).

---

[4] "SuperPAC" is generally used to refer to what is more formally known under the federal election law as an independent expenditure-only committee.

A court may find ambiguity in a statute when the language may be reasonably interpreted in more than one way. *Bethenergy Mines, Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth.), *appeal denied*, 685 A.2d 547 (Pa. 1996). Whenever possible, courts engaging in statutory construction must seek to give meaning to all of the provisions of a statute. 1 Pa. C.S. § 1922(2). Additionally, when reviewing a statute to discern the General Assembly's meaning, courts should presume that the General Assembly intended for all of the provisions of a "statute to be effective and certain." 1 Pa. C.S. § 1922(2).

In enacting Section 1701 of PERA, the General Assembly appears to have had four primary objectives: (1) to prohibit certain payments from employee organizations to political parties or to candidates in a political election contest (Para. 1); (2) to require employee organizations that violate the prohibition contained in Section 1701[1] of PERA to file *with the Board* reports of or affidavits detailing the violations; (3) to require the Board to promulgate rules or regulations "as it may find necessary to prevent the circumvention or evasion of" both the contribution prohibition and reporting requirement; and (4) to provide civil fines against violating employee organizations and criminal consequences on individuals who "willfully violate[]" Section 1701. The question in this matter is unto what governmental agency has the General Assembly vested the power to implement and enforce Section 1701's provisions. We hold that the General Assembly unambiguously vested that power within the Board.

The evidence of the General Assembly's unambiguous intent in this regard can be found in PERA. Section 501 of PERA[5] provides that the Board

---

[5] Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.501.

"shall exercise those powers and perform those duties which are specifically provided for in this act." Section 1701 is part of PERA, and it specifically requires the Board, through promulgated rules and regulations, to prevent violations of Section 1701. We would have to ignore both of these provisions in order to conclude that the General Assembly intended that some agency within the Commonwealth other than the Board police compliance with Section 1701 of PERA.

The Board's arguments to the contrary are not persuasive. The Board begins with the proposition that Section 1701 of PERA necessitates investigatory action, but that Section 1601 of PERA[6] explicitly restricts the Board's general power to investigate to discrete matters. Section 1601 of PERA provides:

> For the purpose of all hearings and investigations which, in the opinion of the board, are necessary and proper for the exercise of the powers vested in it by *Article VI and Article XIII*, and for the purpose of investigating and considering disputes, other than a question concerning the representation of employes, which *it shall be the duty of the board to undertake whenever petitioned so to do by either an employe organization, an employer, or the representative of any unit of employes*, the board shall have the investigatory powers granted in this article.

(Emphasis added.) The Board asserts that this language limits its investigatory powers solely to matters involving union representation, unfair practices, and other "disputes" initiated by employee organizations, employers, and unit representatives. The Board claims that it has no other powers to investigate and, therefore, cannot investigate reports of impermissible contributions under Section 1701 of PERA. Based upon its claim that it has no power to investigate,

---

[6] Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.1601.

9

the Board asserts that its interpretation of Section 1701 of PERA and its referral regulation effectuates the General Assembly's objectives.

Although the iteration within a statutory provision, such as that contained in Section 1601 of PERA, may generally indicate a legislative intent to exclude all other things relative to the subject of the list, *Latella v. Unemployment Compensation Board of Review*, 459 A.2d 464, 473 (Pa. Cmwlth. 1983), we do not believe that investigative powers afforded in Section 1601 of PERA precludes the Board from exercising those powers and performing those duties required in Section 1701 of PERA. Section 1601 of PERA addresses the power of the Board to investigate employer/employee-related disputes. Section 1701, by contrast, addresses a separate topic of prohibited political activity by an employee organization. We must interpret these provisions, if we can, in such a way as to give meaning to both. Section 1601 of PERA, therefore, should not be read as a limitation on the Board's duty to police compliance with Section 1701 of PERA through the promulgation of rules and regulations.

The Board also contends that the Commonwealth Attorneys Act[7] (CAA) vests the power and authority to enforce Section 1701 of PERA in the Office of Attorney General, and not the Board. The Board misconstrues the CAA in this regard. The Board cites Section 204(c) of the CAA, 71 P.S. § 732-204(c). This section provides, in relevant part, that "[t]he Attorney General *shall represent* . . . all Commonwealth agencies . . . in any *action* brought by or against the Commonwealth or its agencies." Section 204(c) of the CAA (emphasis added). This provision does not vest in the Attorney General the administrative agency

---

[7] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 to -506.

power to investigate or enforce a particular statute; rather, it provides only that the Attorney General must provide *legal representation* to the Board in litigation. In other words, the Attorney General becomes the Board's lawyer by statutory default. Moreover, "action" is defined in the CAA as "[a]ny action at law or in equity"—*i.e.*, one brought within the courts. Section 102 of the CAA, 71 P.S. § 732-102. The term does not encompass administrative agency proceedings initiated by an agency that seeks to adjudicate violations of a statute that the agency is entrusted to police. Such matters are, instead, resolved under the Administrative Agency Law, 2 Pa. C.S. §§ 101-754, not through actions at law or in equity. *See Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056 (Pa. 2012) (distinguishing administrative agency proceedings from actions at law). The Board's reliance on Section 403 of the CAA, 71 P.S. § 732-403, is misplaced for the same reasons. Like Section 204(c) of the CAA, Section 403 relates to legal representation of an agency in an "action." It does not vest within the Attorney General any power to *become* the agency itself, only to serve as the agency's lawyer in actions at law or in equity.

As noted above, the General Assembly chose to place the substance of Section 1701 in PERA, a statute entrusted to the Board to enforce. The General Assembly vested the Board with the power to adopt regulations to "prevent the circumvention and evasion" of the prohibition against impermissible contributions. It seems obvious that the General Assembly intended for the Board to do more than simply collect information. To the contrary, it is evident from PERA, and specifically Section 1701, that the General Assembly intended to confer on the Board "an ability to secure compliance with the statutory requirements."

11

*Commonwealth v. Beam*, 788 A.2d 357, 361 (Pa. 2002). If not express, it is implicit. *Id.*

We must also address the Board's argument that it lacks the power to impose the criminal penalties set forth in paragraph 5 of Section 1701 of PERA, relating to persons who willfully violate the section. Under the Pennsylvania Rules of Criminal Procedure, a "criminal proceeding" includes actions seeking the enforcement of statutes that provide for criminal penalties. Pa. R. Crim. P. 103 (definitions of "criminal proceedings" and "penal laws"). To the extent the Board determines that an individual may have willfully violated Section 1701 of PERA, subjecting that individual to potential criminal penalties (*i.e.*, fine and/or imprisonment), such a charge must be addressed consistent with the Pennsylvania Rules of Criminal Procedure and not under the AAL. *See Town of McCandless v. Bellisario*, 709 A.3d 379 (Pa. 1998). With respect to criminal prosecutions, Section 205(a)(6) of the CAA, 71 P.S. § 732-205(a)(6), provides:

> The Attorney General shall have the power to prosecute in any county criminal court the following cases:
>
> . . .
>
> (6) Criminal charges investigated by and referred to him by a Commonwealth agency arising out of enforcement provisions of the statute charging the agency with a duty to enforce its provisions.

Accordingly, it is reasonable and appropriate, and consistent with both Section 1701 of PERA and the CAA, for the Board to refer to the Attorney General any potential criminal violations of PERA for the exercise of his/her prosecutorial discretion.

We now apply the above law in order to determine the legality of the Board's Transfer Order. Upon doing so, we are compelled to reverse. It appears clear from the record and the parties' briefs that the Board conducted no

12

independent review of the allegations in Trometter's report or the answer thereto. Instead, the Board served as only a repository of the parties' filings, passing the matter in its entirety onto the Office of Attorney General. In so doing, the Board ignored the General Assembly's intent that it, and not the Attorney General, police compliance with Section 1701 of PERA and abdicated its statutory responsibilities under that provision.

Moreover, to the extent any referral by the Board to the Attorney General is permitted, such referral must be limited in scope to the potential for criminal penalties under Section 1701 of PERA. Criminal penalties are only possible under Section 1701 of PERA with respect to willful violations of the statute by a "person," which PERA defines broadly to include, *inter alia*, individuals and employee organizations. Section 301(10) of PERA, 43 P.S. § 1101.301(10). It is possible that the Board, at some point during the course of an inquiry into a report under Section 1701 of PERA, could determine that a person or persons may have engaged in a willful violation of the statute. At that point in time, the Board could lawfully refer that portion of the matter to the Attorney General for possible criminal prosecution. Based on the record before this Court, however, a referral in this case for possible criminal prosecution was, at best, premature for the reasons stated above.

Accordingly, we conclude that the Board erred in determining that it lacks the authority, and thus the jurisdiction, to enforce Section 1701 of PERA. To the contrary, the Board has the statutory duty and obligation to enforce and implement that section of PERA, thereby ensuring compliance and "preventing the circumvention or evasion of the provisions of this section." Section 1701 of PERA. The Board's Transfer Order is, therefore, inconsistent with the will of the

13

General Assembly and must be reversed. To the extent the Board's regulation, 34 Pa. Code § 95.112, authorizes the Board to delegate its duties under Section 1701 of PERA to the Attorney General, it cannot be harmonized with the General Assembly's intent and, therefore, is invalid. *Popowsky v. Pa. Pub. Util. Comm'n*, 910 A.2d 38, 52-53 (Pa. 2006).

 

 

_____

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Trometter,                          :
                 Petitioner   :
                                      :
          v.                        :     No. 1484 C.D. 2015
                                        :
Pennsylvania Labor Relations Board,      :
                 Respondent   :

## **O R D E R**

AND NOW, this 8th day of September, 2016, the Pennsylvania Labor Relations Board's (Board) order is REVERSED. The matter is REMANDED to the Board for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

 

                            _____
                             P. KEVIN BROBSON, Judge