IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Freedom Foundation,    :
                    Petitioner    :
                                         :
        v.    :
                                           :
Pennsylvania Labor Relations Board,    :   No. 873 C.D. 2025
                    Respondent    :   Argued: April 13, 2026


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STELLA M. TSAI, Judge

OPINION
BY JUDGE TSAI                              FILED: June 22, 2026


Petitioner Freedom Foundation (Foundation) petitions for review of an order of the Pennsylvania Labor Relations Board (Board), dismissing exceptions filed by the Foundation and granting a motion to dismiss a report of alleged illegal political contributions as untimely filed. We now affirm the order of the Board.

## I. BACKGROUND

The Foundation is a 501(c)(3) nonprofit organization[1] with a mission to promote individual liberty, free enterprise, and limited, accountable government through policy research and advocacy, outreach and education, and public interest litigation. The Pennsylvania State Education Association (PSEA) is an employee organization under Section 301 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.301, representing public school teachers and other school personnel.

---

[1] *See* 26 U.S.C. § 501(c)(3).

On July 24, 2024, the Foundation filed with the Board a "report" of illegal political contributions[2] by PSEA. In the report, the Foundation alleged that PSEA violated Section 1701 of PERA, 43 P.S. § 1101.1701 (repealed in part), by illegally using the Fund for Student Success, an unregistered political committee, to make two political contributions, totaling $1,475,000 to the Democratic Governors Association (DGA), which in turn contributed the funds to Shapiro for Pennsylvania, the authorized political committee of then-Pennsylvania gubernatorial candidate Josh Shapiro. The Foundation further alleged that PSEA failed to disclose the contributions to the Board in violation of Section 1701 and the Board's regulation set forth at 34 Pa. Code § 95.111. The Foundation filed an amended report on July 30, 2024, which the Board acknowledged. The Board scheduled a hearing on the matter.

Prior to the hearing, PSEA moved to dismiss the matter, claiming that it did not violate Section 1701 of PERA and that the Foundation's filing was untimely under the four-month statute of limitations set forth in Section 1505 of PERA, 43 P.S. § 1101.1505 (repealed in part). The Foundation responded by arguing that Section 1505 applies only to unfair practice charges under Section 1201 of PERA, 43 P.S. § 1101.1201, and not to reports of illegal political contributions submitted pursuant to 34 Pa. Code § 95.112. Relative to this issue, the parties stipulated to the authenticity of certain public documents relating to the Foundation's report. Additionally, PSEA filed a petition for relief, requesting that the Board clarify that the Foundation lacked standing to participate in the case as a party. More

_____

[2] Section 1701 of PERA prohibits an employe organization from making political contributions out of the funds of the employe organization. 43 P.S. § 1101.1701. The Board's regulation set forth at 34 Pa. Code § 95.112(a) empowers "[a]n individual who has knowledge of a political contribution or other activity by an employe organization thought to be in violation of [S]ection 1701 of [PERA] (43 P. S. § 1101.1701) [to] file a report with the Board."

specifically, PSEA took the position that, because the Foundation lacked any concrete interest in the matter, its role in the proceedings should be limited to the filing of a charge of violation.

On March 26, 2025, a Hearing Examiner issued a proposed decision and order granting PSEA's motion to dismiss, having found the report untimely under Section 1505 of PERA. The Hearing Examiner's proposed disposition rendered PSEA's pending petition for relief moot. The Foundation filed exceptions to the proposed decision and order with the Board, to which PSEA responded. By order dated June 17, 2025 (Final Order), the Board dismissed the Foundation's report as untimely without addressing the merits of the report. In so doing, the Board adopted the Hearing Examiner's discussion rejecting the Foundation's argument.

As to the four-month statute of limitations in Section 1505 of PERA, the Board noted that "the Hearing Examiner found that the July 29, 2024[] report, and the July 30, 2024 amendment thereto, were not filed within four months of when the Foundation knew or should have known of the contributions in May of 2022, or that PSEA had failed to report the contributions." Final Order at 1. As to the Board's interpretation of the language of Section 1505, the Board explained:

> Applying a plain meaning to the term "charge" or "petition" is consistent with PERA and the Commonwealth Court's holding in *Trometter v.* [*Pennsylvania Labor Relations Board*], 147 A.3d 601 (Pa. Cmwlth. 2016). As recognized by the Hearing Examiner, "charge" and "petition" are not defined in Section 301 of PERA. Furthermore, in *Trometter*, the Commonwealth Court applied a plain meaning to "charge" and "petition" in holding that the Board has broad investigative authority under Section 1601 [of PERA] to entertain reports filed under Section 1701 of PERA. Thus, as correctly held by the Hearing Examiner, the term[s] "charge" or "petition" must be afforded their plain meaning in PERA, such as to include a "report" of unlawful political contributions under Section 1701, elsewise the Board would not have the statutory authority to investigate under Section 1601 of PERA, [43 P.S. § 1101.1601,] as mandated by *Trometter*, *supra*.

3

Likewise, Section 1505 [of PERA] similarly addresses the Board's investigatory jurisdiction to [sic] "acts which occurred or statements which were made more than four months prior to the filing of the petition or charge." 43 P.S. § 1101.1505. Thus, just as Section 1601's investigation of petitions and charges was read to encompass Section 1701 [of PERA], so too must Section 1505's four-month statute of limitations be read to include reports under Section 1701. Accordingly, the Hearing Examiner did not err in construing Section 1505 of PERA to include reports filed under Section 1701, and[,] therefore, the Foundation's exceptions thereto shall be dismissed.

Final Order at 2 (footnote omitted).

The Foundation petitioned this Court for review, and PSEA timely intervened. Thereafter, PSEA filed with the Court an application to quash the petition for review for lack of standing to appeal, which the Board joined. By order issued October 1, 2025, this Court directed that the application and answer be listed for consideration with the merits of the appeal.

## II. ISSUES

On appeal,[3] the Foundation identifies two issues in its statement of the questions presented. The Foundation presents the issues as: (1) whether the Board erred in deciding that the four-month statute of limitations set forth in Section 1505 of PERA barred consideration of the Foundation's report; and (2) if the Court concludes that the four-month statute of limitations is inapplicable, whether the report is not untimely under any other applicable statute of limitations. The Board identifies two issues in its counter-statement of questions presented. The Board presents the issues as: (1) whether the Foundation has standing to file a report under Section 1701 of PERA; and (2) whether the Board clearly erred in holding that the

---

[3] "This Court's [standard] of review of a final order of the Board 'is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed, or whether the [Board's] necessary findings are supported by substantial evidence.'" *Cook v. Pa. Lab. Rels. Bd.*, 315 A.3d 885, 889 n.4 (Pa. Cmwlth. 2022) (quoting *Lycoming Cnty v. Pa. Lab. Rels. Bd.*, 943 A.2d 333, 341 n.20 (Pa. Cmwlth. 2007) (second alteration in *Cook*)).

4

four-month statute of limitations in Section 1505 applies to reports of illegal political contributions under Section 1701. PSEA, too, identifies two issues in its counter-statement. PSEA presents the issues as: (1) whether the Foundation lacked appellate standing because it is not aggrieved by the Board's order and does not have a direct interest in the matter, such that this appeal should be quashed; and (2) if the Court reaches the merits, whether the Board's order results from a permissible interpretation of Section 1505. Thus, before we proceed with an analysis of the merits of the Foundation's appeal, we must consider whether it has standing to appeal.

### III. STANDING TO APPEAL

Our Court has explained standing to appeal an order of the Board to this Court, as follows:

> Pursuant to Section 702 of the Administrative Agency Law, "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom. . . ." 2 Pa. C.S. § 702 (emphasis added). In addition, Pennsylvania Rule of Appellate Procedure 501 provides: "[e]xcept where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order . . . may appeal therefrom." Pa.R.A.P. 501 (emphasis added). Thus, the common theme is that only a person that is "aggrieved" by a decision has standing to challenge the tribunal's order. Although the Administrative Agency Law and Appellate Rules do not define "aggrieved," case law has established that a party is "aggrieved" if said party "(a) ha[s] a substantial interest in the subject[ ]matter of the litigation; (b) the interest [is] direct; and (c) the interest [is] immediate and not a remote consequence." Additionally, a party is "aggrieved" when "the party has been adversely affected by the decision from which the appeal is taken." Generally, a party who prevailed in a proceeding is not an aggrieved party and, therefore, has no standing to appeal. "A prevailing party that disagrees with the legal reasoning of an order o[f] a court or agency or may have had a particular issue decided against it lacks standing to appeal because it is not adversely affected by the order."

5

*Cook*, 315 A.3d at 901-02 (internal citations omitted) (footnote omitted).

PSEA, in support of its application to quash, argues that the Foundation lacks standing to appeal, explaining that Section 702 of the Administrative Agency Law extends the right to appeal to persons "aggrieved" by an adjudication and who have a "direct interest" in the matter. PSEA maintains that the Foundation has no standing to appeal because it has no direct interest in the matter and is not aggrieved in any material way by the Board's dismissal of its charges, as its only asserted interest in this case is a generalized, ideological interest in the alleged violations.

Although the Board joined PSEA's application to quash, the Board presents its standing argument with a slight twist—*i.e.*, that the Foundation lacked standing to file the report. Thus, while PSEA's standing argument is jurisdictional in nature, the Board's argument appears to be an alternative basis to affirm its order. The Board bases its position on the notion that only an employee who has involuntarily paid union dues has standing to challenge the use of those funds by a union for political speech, and, because the Foundation has not paid any union membership dues to PSEA, it lacks standing to pursue claims under Section 1701 of PERA.

The Foundation relies largely on the provisions of PERA and its regulations to argue that it has standing before the Board by virtue of statute and has standing to appeal by virtue of aggrievement and party status under Section 702 of the Administrative Agency Law and Pennsylvania Rule of Appellate Procedure 501.

In resolving the standing issues, it is important to note that the Board did not consider whether the Foundation had standing to file a report nor did it consider whether the Foundation had standing to participate as a party in the proceedings before the Board; rather, the only legal issue ruled upon by the Board was whether the Foundation timely filed its report of alleged illegal political contributions. On

6

that issue, the Board concluded that the Foundation's report was untimely. Thus, because the Board's order dismissed the Foundation's report as untimely, the Foundation was aggrieved by the Board's order. Furthermore, the Foundation has a direct interest in whether its report was timely. As a result, the Foundation was aggrieved by the Board's order and has a direct interest in the matter, such that the Foundation has standing to appeal the Board's order.[4] As to whether the Foundation has standing for the purpose of filing the report and, if so, the extent to which the Foundation has standing to participate in the proceedings before the Board are matters that must be decided in the first instance by the Board. Those considerations, however, are not relevant to whether the Foundation has standing to appeal the dismissal of its report based on timeliness.

For the reasons stated above, we deny PSEA's application to quash.

## IV. DISCUSSION

### A. Pertinent PERA Provisions

The focus of the underlying matter is Section 1701 of PERA, pertaining to employee organizations and political contributions, which provides:

> *No employe organization shall make any contribution out of the funds of the employe organization either directly or indirectly to any political party or organization or in support of any political candidate for public office.*
>
> *The [B]oard shall establish such rules and regulations as it may find necessary to prevent the circumvention or evasion of the provisions of this section.*

---

[4] Neither PSEA nor the Board argue that the Foundation's interest is not immediate or a remote consequence. *See Cook*, 315 A.3d at 902. Had they argued such, this Court would have disagreed. As such, these requirements are not an impediment to the Foundation's standing to appeal the Board's order to this Court.

7

*If an employe organization has made contributions in violation of this section it shall file with the board a report or affidavit evidencing such contributions within ninety days of the end of its fiscal year.* Such report or affidavit shall be signed by its president and treasurer or corresponding principals.

Any employe organization which violates the provisions of this section or fails to file any required report or affidavit or files a false report or affidavit shall be subject to a fine of not more than two thousand dollars ($2,000).

Any person who wilfully violates this section, or who makes a false statement knowing it to be false, or who knowingly fails to disclose a material fact shall be fined not more than one thousand dollars ($1,000) or imprisoned for not more than thirty days or both. Each individual required to sign affidavits or reports under this section shall be personally responsible for filing such report or affidavit and for any statement contained therein he knows to be false.

Nothing herein shall be deemed to prohibit voluntary contributions by individuals to political parties or candidates.

43 P.S. § 1101.1701 (emphasis added).

The Board enacted two regulations pertaining to the reports to be filed pursuant to Section 1701 of PERA—*i.e.*, 34 Pa. Code §§ 95.111 and 95.112. The first regulation provides:

An employe organization which has made contributions out of funds of the employe organization either directly or indirectly to a political party or organization or in support of a political candidate for public office shall file a report with the Board which shall contain the following:

(1) A statement describing the dates, places of occurrence, amounts and beneficiaries of the contributions.

(2) The signatures of the president and treasurer or corresponding principals of the employe organization.

34 Pa. Code § 95.111. The second regulation provides:

(a) An individual who has knowledge of a political contribution or other activity by an employe organization thought to be in violation of section 1701 of the act (43 P. S. § 1101.1701) may file a report with the Board.

The report shall be signed and sworn to before any person authorized to administer oaths.

(b) The report shall contain the following information:

(1) The name, address, telephone number and affiliation, if any, of the charging party.

(2) A clear and concise statement of the facts constituting the alleged illegal contribution, including the names of the individuals involved, the name of the employe organization, and the time, place of occurrence and nature of each particular contribution or act alleged.

(c) Upon receipt of the *report*, if it appears to the Board that an investigation in respect to the charge should be instituted, the Board shall refer the report to the Attorney General of the Commonwealth for proceedings under applicable statutes.

34 Pa. Code § 95.112 (emphasis added). As will be discussed below, this Court declared subsection (c) to be unconstitutional in *Trometter*.

As to timeliness, the only period of limitations set forth in PERA is contained in Section 1505 of PERA, which provides:

No petitions or charges involving questions arising under clause (2) of subsection (a) of [S]ection 1201 of Article XII shall relieve the board of determining any questions arising under [S]ections 603, 604 and 605 of Article VI immediately, and in their regular and normal order, and the making of a certification thereon if such is warranted. *No petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the petition or charge.*

43 P.S. § 1101.1505 (emphasis added).

## B. Commonwealth Court's Decision in *Trometter*

The parties' analyses rely heavily on this Court's decision in *Trometter*, and, for that reason, a discussion of it at this juncture is pertinent. In *Trometter*, Mary Trometter (Trometter), a dues-paying member of PSEA, filed a report[5] with the

---

[5] The report appeared to be prepared on a form supplied by the Board and titled "Charge of Illegal Contributions(s) Under [PERA]." *Trometter*, 147 A.3d at 605.

9

Board, alleging that the National Education Association (NEA) and PSEA violated Section 1701 of PERA through paid advocacy on behalf of then-candidate Tom Wolf for his 2014 gubernatorial race. Specifically, she alleged that the unions sent a letter to her husband, recommending that he "join Mary [Trometter] in voting for Tom Wolf for Governor." *Trometter*, 147 A.3d at 605. The letter indicated that the NEA Advocacy Fund, the NEA's SuperPAC" paid for it. *Id.* She further alleged that reports filed with the Federal Election Commission during the 2013 election year revealed that NEA gave over $12 million, made up in whole or in part of union dues money, to the NEA's SuperPAC, which she asserted constituted an illegal contribution under Section 1701. Trometter also alleged that PSEA violated Section 1701 by including endorsements of Tom Wolf's candidacy in a PSEA magazine, which is funded by members' dues. The Board directed the unions to answer, which they did.

Rather than address the merits of the report, the Board issued an order, transferring the report to the Office of Attorney General pursuant to its "referral provision" in 34 Pa. Code § 95.112. In its transfer order, the Board summarized the position of the parties and concluded that Trometter "misconstrues the Board's role in the application of Section 1701 of PERA by requesting that the Board impose the statutory penalties of fines, imprisonment[,] or both." *Id.* The Board opined that its functions under Section 1701 of PERA do not include determining whether a violation of that provision occurred; instead, it is charged with developing rules and regulations for the "disposition" of alleged violations, which it did when it promulgated 34 Pa. Code § 95.112(c). *Id.* at 605-06.

On appeal to this Court, Trometter argued that the Board erred in concluding that it has no investigatory or enforcement powers to act upon reports of alleged

10

violations of Section 1701 of PERA. She also challenged the Board's referral provision in 34 Pa. Code § 95.112(c) as invalid or inconsistent with Section 1701 and the Board's application of the provision. The referral provision directed the Board, upon receipt of a report under Section 1701 to refer the report to the Attorney General for proceedings "if it appears to the Board that an investigation in respect to the charge should be instituted." *Id.* at 604 (quoting 34 Pa. Code § 95.112). Citing Section 501 of PERA, 43 P.S. § 1101.501[6], we concluded that the General Assembly vested the Board with the investigatory and enforcement provisions to "police compliance with Section 1701 of PERA." *Id.* at 607. We highlighted Section 1601 of PERA, which provides:

> For the purpose of all hearings and investigations which, in the opinion of the board, are necessary and proper for the exercise of the powers vested in it by Article VI and Article XIII, and for the purpose of investigating and considering disputes, other than a question concerning the representation of employes, which it shall be the duty of the [B]oard to undertake whenever petitioned so to do by either an employe organization, an employer, or the representative of any unit of employes, the [B]oard shall have the investigatory powers granted in this article.

*Id.* (quoting 43 P.S. § 1101.1601). We stated that "Section 1601 . . . should not be read as a limitation on the Board's duty to police compliance with Section 1701 . . . through the promulgation of rules and regulations." *Id.* at 608. We concluded that "it is evident from PERA, and specifically Section 1701, that the General Assembly intended to confer on the Board 'an ability to secure compliance with the statutory requirements.'" *Id.* at 609. We summarized: "[T]he Board has the statutory duty and obligation to enforce and implement [Section 1701] of PERA, thereby ensuring

---

[6] Section 501 of PERA provides: "The [B]oard shall exercise those powers and perform those duties which are specifically provided for in this act. These powers and duties shall be in addition to and exercised completely independent of any powers and duties specifically granted to it by other statutory enactments."

compliance and 'preventing the circumvention or evasion of the provisions of [Section 1701],'" and such delegation of duties to the Attorney General "cannot be harmonized with the General Assembly's intent and, therefore, is invalid." *Id.* at 610.

## C. Parties' Arguments Regarding Application of Section 1505 of PERA

### 1. Foundation's Section 1505 Argument

The Foundation argues that the Board erred as a matter of law by applying the four-month statute of limitations period in Section 1505 of PERA to the Foundation's report, contending that Section 1505's statute of limitations applies only to charges of unfair practices and not to reports of illegal contributions under 34 Pa. Code § 95.112. The Foundation asserts that the applicability of Section 1505 to the report turns on whether the Foundation's report is a "petition," a "charge," or neither. The Foundation further asserts that Section 1505's use of the term "petition" has been treated as surplusage historically. Additionally, the section's use of the term "charges" in the first sentence refers to "charges that a public employer has engaged in unfair practices by 'dominating or interfering with the formation, existence or administration of any employe organization' in violation of [Section 1201(a)(2)[ of PERA], 43 P.S. § 1101.1201(a)(2)]." Foundation's Br. at 8-9. According to the Foundation, neither the Board nor PSEA contend that the Foundation's report of illegal political contributions qualifies as a "petition" or "charge" under the first sentence of Section 1505. The Foundation contends that the report, therefore, cannot be a "petition" or "charge" for purposes of the second sentence of Section 1505. The Foundation maintains that, despite this logic, the Board "shoehorn[ed] the Foundation's report of illegal contributions under 34 Pa. Code § 95.112 into the limitations period for charges of unfair practices[ by]

12

adopt[ing] an overly expansive, 'plain meaning' definition of the term 'charge' as used in the second sentence of [Section 1505]." Foundation's Br. at 9. The Foundation posits that the Board should have construed the term "charge" in "accordance with its technical meaning in the context of . . . PERA and [Board] regulations as charges filed under [Section 1302 of PERA,] 43 P.S. § 1101.1302[,] alleging unfair practices prohibited by [Section 1201 of PERA]." Foundation's Br. at 9-10. By not doing so, the Foundation asserts, the Board improperly interpreted the term in an overly broad manner "as any 'accusation' of wrongdoing under PERA." Foundation's Br. at 9-10.

In further support of its position, the Foundation turns to Section 1903 of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. § 1903, which directs that, while words are ordinarily to be "construed according to rules of grammar and according to their common and approved usage," "technical words and phrases and such others as have acquired a peculiar and appropriate meaning" are to "be construed according to such peculiar and appropriate meaning." The Foundation attacks the Board's employment of the "common usage" of the term "charge"—*i.e.*, the use of the generic meaning "accusation"—as opposed to recognizing it as a technical word in the context of PERA meaning "charges of unfair practices." Foundation's Br. at 11. The Foundation identifies and compares the six instances in which the term "charge" appears in PERA outside of Section 1505, arguing that they all refer to charges of unfair practices.[7] The Foundation also relies on the Board's regulations to confirm that the term "charge" refers to "charges of unfair practices,"

---

[7] *See* Section 605(b) of PERA, 43 P.S. § 1101.605(b) ("The [B]oard shall certify the results of said election within five working days after the final tally of votes if no charge is filed by any person alleging that an 'unfair practice' existed in connection with said election."); Section 803 of PERA, 43 P.S. § 1101.803 (providing refusal by a public employer or labor organization to submit to

13

referring our attention to 34 Pa. Code § 95.31, which provides, in part, that "charges shall be in writing on forms supplied by the [B]oard" and "shall include . . . a clear and concise statement of the facts constituting the alleged unfair practice."[8] The Foundation characterizes the Board's position that "charge" somehow refers to more than a "charge of unfair practices" as running "counter to bedrock principles of statutory construction." Foundation's Br. at 14-15 (citing *Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 313 (Pa. 2018) ("[W]here the meaning of a word or phrase is clear when used in one section of a statute, it will be construed to have the same meaning in another section of the same statute.")). On this point, the Foundation concludes its argument by asserting "[t]here is neither a statutory nor a regulatory basis for [the Board's] departure from the technical meaning it has used for the word 'charge' used [sic] for more than fifty years." Foundation's Br. at 17.

Turning its attention to the term "report" in PERA and the Board's regulation, the Foundation argues that the term "report," too, "is a term of art unique to reports

---

mediation and factfinding constitutes "refusal to bargain in good faith" over which "unfair practice charges may be filed"); Section 1302 of PERA, 43 P.S. § 1101.1302 (governing "[charges] by any interested party that any person has engaged in or is engaging in any . . . unfair practice"); Section 1306 of PERA, 43 P.S. § 1101.1306 (governing the prosecution of complaints issued by the Board in response to charges of unfair practices); Section 1401 of PERA, 43 P.S. § 1101.1401 (empowering the Board to "petition the court of competent jurisdiction for appropriate relief . . . upon the filing of a charge alleging the commission of an unfair labor practice committed during, or arising out of the collective bargaining procedures set forth in [S]ections 801 and 802 of [PERA]"); and Section 1501 of PERA, 43 P.S. § 1101.1501 (granting the Board the "power to petition the court of common pleas of any county wherein the unfair practice in question occurred, or wherein any person charged with the commission of any unfair practice resides or transacts business, for the enforcement of" a [Board] order and providing that "[t]he parties before the court shall be the [B]oard, the person charged with the commission of any unfair labor practice, and may include the charging party."). Foundation's Br. at 13-14.

[8] The regulation further provides, in part: "After a charge has been filed, if it appears to the Board that formal proceedings . . . should be instituted, the Board . . . may issue . . . a complaint . . . , stating the alleged unfair practices, and containing a notice of hearing." 34 Pa. Code § 95.31(c).

of illegal contributions by employee organization and distinct from 'charges' alleging unfair practices," as can be confirmed by our decision in *Trometter*. Foundation's Br. at 17 (quoting *Trometter*, 147 A.3d at 608). The Foundation characterizes Trometter as describing the filing alleging violations of Section 1701 of PERA as a "report" and never as a "charge" and deeming such a report as a "separate topic" from an unfair practice charge involving employment-related disputes. Foundation's Br. at 17. The Foundation contends that had the General Assembly intended the four-month statute of limitations in Section 1505 of PERA to apply to a report, it would have explicitly provided such; "[i]nstead, it codified a limitations period only for 'charges' of unfair practices while delegating to the [Board] the task of crafting mechanisms to enforce the prohibition on employee organization political contributions." Foundation's Br. at 17 (citing Section 1701 of PERA ("The [B]oard shall establish such rules and regulations as it may find necessary to prevent the circumvention or evasion of the provisions of this section.")). Noting that, when the Board adopted 34 Pa. Code § 95.112 pursuant to the mandate of Section 1701, the Board neither imposed nor referenced a limitations period for a "report" of illegal contributions; the Foundation characterizes this omission as "underscoring the independence of such a report from the four-month limitations period for 'charges.'" Foundation's Br. at 18. The Foundation concedes, however, that the Board's regulation at 34 Pa. Code § 95.112(c) includes a reference to both "report" and "charge," but the Board dismisses the significance of such language, reasoning that, in this instance, "charge" "clearly refers to claims made within a report, not [to] the report itself." Foundation's Br. at 20.

The Foundation next turns its attention to the concepts of statutory construction that require courts, when interpreting a statute, "to ascertain and

15

effectuate that intention of the General Assembly" and to avoid an interpretation that renders the statute "absurd, impossible of execution[,] or unreasonable." Foundation's Br. at 20 (quoting 1 Pa. C.S. §§ 1921(a), 1922). The Foundation reasons that the Board's application of the four-month statute of limitations in Section 1505 of PERA would undermine Section 1701 of PERA, because "[u]nions would be able to game the system so they could timely disclose illegal political contributions in such a way that they were beyond the limitations period during which an enforcement action could be brought. They would, thus, be able to flout the law with impunity." Foundation's Br. at 20. Illustrating this point, the Foundation hypothesizes that a union with a January-December fiscal year could make illegal political contributions at any point prior to a November election and timely disclose those contributions the following April, at which point the statute of limitations to initiate enforcement actions would have expired. In other words, the Foundation warns that the Board's reasoning would allow unions to circumvent and evade the prohibition in Section 1701 by engaging in the much-later-in-time, after-the-fact, self-reporting also required by Section 1701. The Foundation posits that such delayed reporting would essentially render Section 1701 null to the extent it tasks the Board with "prevent[ing] the circumvention or evasion of the provisions of this section," thereby rendering the Board's "watchdog role a farce." Foundation's Br. at 21. To the contrary, the Foundation opines that the four-month limitations period is appropriate for unfair practices charges which must be addressed promptly.

As to the use of the word "petition" in PERA, the Foundation observes that the Board's regulation at 34 Pa. Code § 95.1 defines "petition" as "[a] petition or investigation and certification or decertification of a collective bargaining representative filed under [PERA];" in other words, it defines the term as a

16

"representation petition." Foundation's Br. at 26. The timelines for filing representation petitions are set forth in Section 605(7) of PERA, 43 P.S. § 1101.605(7), and, therefore, are not governed by Section 1701 of PERA. Because Section 1701's term "petition" does not, based on common sense, relate to representation petitions, the Foundation analogizes that Section 1701's "use of [the term] 'charge' should similarly be evaluated 'in light of reason and common sense' and applied only to charges of unfair practices and not to reports of illegal political contributions." Foundation's Br. at 29.

The Foundation further argues that the Board and courts have exclusively applied Section 1505 of PERA to unfair practice charges and rejected its application to other PERA claims, observing that no party has cited a single authority supporting application of the four-month limitations period in Section 1505 in similar circumstances to these now before the Court.[9]

Finally, the Foundation argues that "*Trometter* militates *against* application of the four-month statute of limitations in [Section 1505 of PERA] to reports of political contributions in violation of [Section 1701 of PERA]." Foundation's Br. at

---

[9] *See Appeal of Churchill Area Sch. Dist.*, 374 A.2d 1000, 1002 (Pa. Cmwlth. 1977) (observing while court did not decide "whether the last sentence of [PERA] Section 1505 applies exclusively to charges relating to unfair labor practices," it noted that the Board argued that Section 1505 "speaks only to charges of unfair labor practices" and "does not apply to other applications"); *Narcotics Agents Reg'l Comm. ex rel. McKeefery v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 780 A.2d 863, 867 (Pa. Cmwlth. 2001) ("AFSCME asserts that the claims in the FOP's Petition [regarding breach of the duty of fair representation] are barred by the statute of limitations. Under [S]ection 1505 of [PERA], the statute of limitations for filing an unfair labor practice charge is four months, and the [p]etition here was filed more than four months from the acts or omissions giving rise to them. However, as stated above, this case does not involve an unfair labor practice charge filed with the [Board]; therefore, [S]ection 1505 . . . does not apply.") (cleaned up); and *Lancaster Cnty. v. [Pa.] Lab. Rels. Bd.*, 62 A.3d 469, 473 (Pa. Cmwlth. 2013) ("The four-month limitations period for the filing of an unfair labor practice charge under Section 1505 of . . . PERA is triggered when the complainant has reason to believe that the unfair labor practice has occurred.").

17

35 (emphasis in original). Instead, the Foundation contends that "such reports are 'a separate topic' from representation petitions and unfair practice charges and are to be processed according to [the Board's] rules adopted pursuant to [Section 1701]." *Id.*

### 2. Board's Section 1505 Argument

The Board argues that it did not clearly err in holding that reports filed under Section 1701 of PERA and 34 Pa. Code § 95.112 are "charges" to be investigated by the Board in accordance with the Board's existing statutory investigative authority under Section 1601 of PERA, such that the statute of limitations set forth in Section 1505 of PERA is applicable. The Board explains that, in *Hollinger v. Department of Public Welfare*, 365 A.2d 1245 (Pa. 1976), the Pennsylvania Supreme Court held that the Board has jurisdiction over charges of unfair practice that are filed under Section 1201(b) of PERA, 43 P.S. § 1101.1201(b), concerning certain claims involving union dues and membership that would tend to coerce or interfere with employee rights under Section 401 of PERA, 43 P.S. § 1101.401. Subsequent to *Hollinger* and prior to *Trometter*, the Board did not view a report filed under Section 1701 of PERA and 34 Pa. Code § 95.112 as a properly filed charge of unfair practices under Section 1201(b)(1) and 34 Pa. Code § 95.31. The Board observes that, in *Trometter*, Trometter argued that the report filed under Section 1701 was a charge subject to investigation under Section 1601 and that the Board was directed under Section 501 of PERA to exercise the powers and perform the duties granted to it in PERA; in other words, Trometter argued that the Board was required to investigate claims of illegal contributions under Section 1701 pursuant to its investigative powers in Section 1601. As a result of this Court's apparent agreement with Trometter's position and our remand of the matter to the Board for an

18

investigation into the alleged illegal transaction, the Board has since then viewed *Trometter* "as a directive to investigate the charge of illegal contributions as it would a charge of unfair practices under its existing statutory and regulatory procedures." Board's Br. at 14-15. The Board notes, however, that its investigatory powers in Section 1601 are limited by the four-month statute of limitations in Section 1505 of PERA.

The Board maintains that Section 1505 of PERA is an express limitation on the Board's subject matter jurisdiction to investigate matters under Article XVI of PERA, *e.g.*, *Thomas v. Pennsylvania Labor Relations Board*, 483 A.2d 1016 (Pa. Cmwlth. 1984), which is triggered when the complainant has reason to believe that a violation of PERA has occurred. *E.g.*, *Lancaster Cnty. v. Pa. Lab. Rels. Bd.*, 62 A.3d 469 (Pa. Cmwlth. 2013). The Board distinguishes between *Trometter* and this case, pointing out that in the former there was no factual dispute that the charge of illegal contributions was filed within four months of when Trometter knew, or should have known, of PSEA's alleged political contributions, whereas here the Foundation did not file its report during the four-month period after which a reasonable non-profit corporation should have reason to believe that a public section union in Pennsylvania may have made a political contribution in violation of Section 1701 of PERA. The Board agrees with the Hearing Examiner's finding that the Foundation should have been on notice of a possible violation of Section 1701 "based on the publicly accessible official filings with the Internal Revenue Service available in July of 2022[;]" instead, the Foundation waited two years after it became aware of those alleged political contributions. Board's Br. at 17-18.

As such, the Board argues that it was not clearly erroneous or even an error of law for the Board to address the report filed under Section 1701 of PERA as a charge

in accord with *Hollinger*, to conduct an investigation under Section 1601 of PERA, and to apply the four-month limitation period set forth in Section 1505 of PERA. Given that the Board found that the Foundation should have known of the possible illegal contribution in July 2022, the Board contends that it properly concluded that the report was untimely and, therefore, barred by the statute of limitations.

### 3. PSEA's Section 1505 Argument

PSEA argues that the Board's order should be affirmed as a permissible interpretation and application of PERA, a statute which the Board is charged with administering. PSEA views the Board's decision as reading the term "charge" in Section 1505 of PERA according to its plain meaning to hold that the four-month limitations period barred the Foundation's filing of the report. Characterizing this interpretation by the Board as "plainly a permissible interpretation" of PERA to which the Board is entitled to deference from this Court, PSEA then approves of the Board's interpretation as "reflect[ing] the best and most natural reading of [PERA], . . . consistent with the Board's regulations and case precedent" and denounces the Foundation's interpretation as "plainly inferior to the Board's." PSEA's Br. at 17.

In fact, PSEA characterizes the Foundation as conceding that "the Board has the authority to apply the very limitations period it enforced here, complaining only that the Board should have utilized rulemaking rather than adjudication to do so." PSEA's Br. at 2. PSEA maintains that the Foundation, however, has waived that issue by failing to raise it below. Moreover, PSEA characterizes "the Board's decision to subject [the Foundation's charges to the . . . four-months limitation period" applied to "any 'charge' is the best and most natural application of [PERA] to the facts at hand." *Id.*

20

4. Applicability of Section 1505 of PERA to reports under Section 1701 of PERA

After considering the arguments of the parties, we agree with the Board that the four-month statute of limitations set forth in Section 1505 of PERA is applicable to reports of allegedly illegal political contributions. Section 1701 of PERA prohibits an employe organization from making any political contribution out of the funds of the employe organization and directs "the [B]oard to establish such rules and regulations as it may find necessary to prevent the circumvention or evasion of the provision[]." 43 P.S. § 1101.1701. The Board, in response to the General Assembly's directive in Section 1701, adopted 34 Pa. Code § 95.112(c), wherein the Board referred to a "report" under Section 1701 as a "charge" but required this charge—*i.e.*, a charge of a violation of Section 1701—to be referred to the Attorney General due to the Board's apparent belief that it did not have the authority to take action on violations of Section 1701. This Court, in *Trometter*, made clear that Board did indeed possess such authority and, in actuality, had a "statutory duty and obligation to enforce and implement [Section 1701] of PERA" through its promulgation of rules and regulations. *Trometter*, 147 A.3d at 608-10.

In *Trometter*, we explained that the Board's failure to conduct "an independent review of the allegations in Trometter's report" and the Board's decision to serve only as "a repository of the parties' filings, passing the matter in its entirety onto the . . . Attorney General . . . ignored the General Assembly's intent that [the Board], and not the Attorney General, police compliance with Section 1701 of PERA." *Id.* at 609. The Court recognized that "[i]t is possible that the Board, at some point during the course of an inquiry into a report under Section 1701. . . , could determine that a person or persons may have engaged in a willful violation of the statute. At that point in time, the Board could lawfully refer that portion of the

21

matter to the Attorney General for possible criminal prosecution." *Id.* We clarified, however, that, "to the extent any referral by the Board to the Attorney General is permitted, such referral must be limited in scope to the potential for criminal penalties under Section 1701," which are possible under Section 1701 only "with respect to willful violations of the statute by a 'person,' which PERA defines broadly to include, *inter alia*, individuals and employee organizations." *Id.* (citing Section 301(10) of PERA, 43 P.S. § 1101.301(10)). Thus, to the extent that 34 Pa. Code § 95.112(c) failed to recognize the Board's duty to enforce Section 1701 and abdicated the responsibility of the Board by automatically referring a report of allegedly illegal campaign contributions to the Attorney General, without any real action by the Board, the regulation is "inconsistent with the will of the General Assembly." *Id.* As a result, the Court reversed the Board's transfer of the report to the Attorney General. None of the parties appear to disagree with our analysis through this point.

The Foundation's insistence that the Board's reference to "charge" in Section 1505 of PERA must refer only to charges of unfair labor practices and not to charges of a report of illegal political contributions is unfounded. Nothing in PERA requires such a conclusion, and the Board, in the portion of 34 Pa. Code § 95.112(c) not struck down by the Court, expressly refers to a "report" as a "charge." Because *Trometter* solidified the Board's duty to enforce Section 1701, the Board's regulation treating the report as a charge subjected the report to the period of limitations set forth in Section 1505. Section 1505 is not limited by its text or otherwise only to charges of unfair labor practices, as it provides, in relevant part, only that "[n]o petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing

of the petition or charge." 43 P.S. § 1101.1505. Thus, it was within the Board's authority to rely on its characterization of a report under Section 1701 as a charge, such that the provisions of PERA and the Board's regulations dealing within charges, generally, applied, including Section 1505 which serves as the only period of limitation set forth in PERA.

The Foundation's assertions that PERA prohibited the Board from treating a report filed under Section 1701 of PERA as a form of a charge through its regulations is not based on any statutory provision and is contrary to the broad power bestowed upon the Board by the General Assembly to enforce Section 1701. Furthermore, the Board's reliance on the four-month statutory limitations period in Section 1501 of PERA does not create circumstances that allow for the circumvention of Section 1701, as courts and the Board have consistently interpreted the four-month statute of limitations as running from the date of the violation or within four months of when the person pursuing the charge knew, or should have known, of the actions that constituted the charge—here, PSEA's alleged political contributions and failure to report the alleged political contributions.

## V. CONCLUSION

Accordingly, we affirm the order of the Board.


_____
STELLA M. TSAI, Judge

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Freedom Foundation,      :
      Petitioner  :
            :
    v.       :
            :
Pennsylvania Labor Relations Board, :
      Respondent :  No. 873 C.D. 2025

**O R D E R**

AND NOW, this 22nd day of June, 2026, the application to quash filed by Intervenor Pennsylvania State Education Association is DENIED, and the order of the Pennsylvania Labor Relations Board is hereby AFFIRMED.

_____
STELLA M. TSAI, Judge